**Faye LOGAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–89–00167–CR.**

Court of Appeals of Texas,
Tyler.

Jan. 16, 1992.

Opinion on Motion for Rehearing
June 22, 1992.

Discretionary Review Refused
Sept. 30, 1992.

Bill Warren, Center, for appellant.

Charles Mitchell, San Augustine, for appellee.

RAMEY, Chief Justice.

This is an appeal of a conviction for murder. TEX.PENAL CODE ANN. § 19.01(a) (Vernon 1974). Appellant Faye Logan was convicted with her daughter, Tommie Lea Davis, in a consolidated trial. A jury assessed punishment at fifty years in the Texas Department of Corrections. We will affirm.

On December 18, 1986, a fire destroyed the residence of Tommie Lea and Kyle Davis. Kyle Davis died in the fire. The following day, Deputy Fire Marshall Donald Turk and Deputy Sheriff Bill Horton investigated the scene of the fire. From visual observations, Officer Turk believed that the fire was a result of arson; his view was bolstered by laboratory reports indicating the presence of a flammable liquid. Later, police officers interviewed Debbie Logan, Tommie Lea Davis' sister-in-law and appellant's daughter-in-law. Debbie Logan told the police that she had overheard appellant and Tommie Lea Davis discussing how to kill the decedent in a fire. The appellant was thereafter indicted for the murder of Kyle Davis.

▇ Appellant asserts eight points of error.[1] By her first point of error, appellant contends that the evidence is insufficient to prove her guilt as alleged in the indictment. Appellant relies upon *Baugh v. State*, 776 S.W.2d 583 (Tex.Cr.App.1989) and *O'Keefe v. State*, 687 S.W.2d 345 (Tex.Cr.App.1985), emphasizing their similarity with the instant case in that they are arson cases, founded upon circumstantial evidence, and with conflicting expert testimony concerning the origins of the respective fires.

While *Baugh* and *O'Keefe* are factually similar, they are not controlling here. Appellant places emphasis upon the fact that the expert witnesses disagreed as to the origin of the fire here as well as in the cited cases. Disagreement between experts is not dispositive. The jury determines the appropriate weight to accord expert testimony. *Coxson v. Atlanta Life Ins. Co.*, 142 Tex. 544, 179 S.W.2d 943 (Tex.Comm'n App.1944, opinion adopted). Jurors may reject expert testimony if such testimony fails to comport with the jurors' concepts of sound logic. *Maryland Casualty Co. v. Hearks*, 144 Tex. 317, 190 S.W.2d 62, 64 (1945); *Van Guilder v. State*, 674 S.W.2d 915, 919 (Tex.App.–San Antonio 1984), *aff'd*, 709 S.W.2d 178 (Tex. Cr.App.1985), *cert. denied*, 476 U.S. 1169,

106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). In choosing to disregard expert testimony, the jury is constrained only by the requirement that any action taken must be pursued in a nonarbitrary manner. *Van Guilder*, 674 S.W.2d at 919.

The appellant's expert investigated the scene of the fire some five months after the incident occurred. This expert testified that he believed that the fire started in the living room area of the home. He based his opinion upon the damage to a wood-frame couch. Only one of the arms of the couch was warped. Additionally, the expert noted that the fire had melted only one side of an air conditioning duct located directly under the couch. From these observations, the expert concluded that the fire was probably started by some accidental means, such as the dropping of a lit cigarette. The expert's opinion was that the fire had no incendiary origin.

The State's evidence was not controverted that a flammable liquid had been used to start the fire. The state contradicted appellant's expert evidence by demonstrating that at the time of its original investigation, immediately after the fire had occurred, the wood-frame couch and air conditioning duct had none of the damage described by the appellant's expert. The state also offered proof that the decedent's body tested at levels of drugs and alcohol so high as to deprive decedent of all his motor functions including the smoking of cigarettes. The jury chose to believe the state's proof that the fire was the result of arson. In light of the entire record, we find no arbitrary conduct in the jury's verdict.

While appellant's case has factual similarities to both *O'Keefe* and *Baugh*, it is distinguishable. In *O'Keefe*, the Court of Criminal Appeals overturned appellant's conviction because the state had shown merely that the destroyed property belonged to appellant and that appellant was observed leaving the scene shortly before the discovery of the fire. *O'Keefe*, 687

---

1. We have assigned new numbers to appellant's points of error for the purpose of addressing them. Points of error one through eight in this opinion correspond respectively to points two, four, six, eight, nine, ten, eleven, and twelve in appellant's brief.

S.W.2d at 349. The Court of Criminal Appeals overturned appellant Baugh's conviction because of a lack of incriminating evidence. *Baugh*, 776 S.W.2d at 585. The court emphasized the lack of direct evidence that the appellant had set the fire and the absence of any witnesses to the ignition of the fire. *Id.* The court also stressed that the circumstantial evidence was insufficient to connect appellant to the fire. *Id.* Regarding the circumstantial evidence, the court noted that there had been no verbal threats by appellant to set the fire, that there were no suspicious circumstances concerning insurance coverage, and that no suspicious paraphernalia was found at the scene of the fire. *Id.*, at 585–86.

The circumstantial evidence in this case is much stronger than in *Baugh* and *O'Keefe*. The record reflects that the night before the fire occurred, a neighbor observed appellant and her daughter moving boxes from the Davis residence. Later testimony revealed that a number of objects that had been in the Davis home were subsequently seen in the appellant's home. Even more damaging was the testimony of Debbie Logan. Witness Logan testified that she had overheard appellant on the telephone discussing the possible ways "to get rid of Kyle." Witness Logan did not know to whom appellant was speaking.

Witness Debbie Logan related another conversation which involved appellant and her daughter and occurred in appellant's home. She stated that approximately one week before the fire, she overheard appellant and her daughter discussing how "they could use lighter fluid and it wouldn't be traced." This was not the only time that witness Logan had overheard appellant discuss using lighter fluid to burn a home. Witness Logan told the jury that in 1984 appellant said that she had used lighter fluid and candles to help a relative recover insurance money. The relative's home

burned down on the night the alleged conversation occurred.

Deputy Bill Horton jailed appellant and her daughter in connection with the crime charged. While appellant was incarcerated, Deputy Horton overheard appellant and her daughter discussing ways to prevent Debbie Logan from testifying in this case. There was other evidence that witness Logan was detained in a motel room against her will to preclude her from appearing as a witness against appellant. While this case is based on circumstantial evidence like *Baugh* and *O'Keefe,* the circumstantial evidence herein was significantly more extensive than the evidence adduced in those two cases.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When viewing the evidence in that light, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Buxton v. State,* 699 S.W.2d 212, 213 (Tex. Cr.App.1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). "If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable is not a rational finding." *Denby v. State,* 654 S.W.2d 457, 464 (Tex.Cr.App.1983) (panel op.). This does not mean, however, that the state must directly refute every purportedly reasonable hypothesis. *Jackson v. State,* 672 S.W.2d 801, 804 (Tex.Cr.App.1984). When a case contains conflicting evidence, the jurors, as rational triers of fact, may choose which evidence to believe. *Id.* In reviewing the jury's verdict, we are not to base our decision upon whether we are convinced to a moral certainty that each and every other reasonable hypothesis was excluded.[2] *Id.* at 803.

---

**2.** The Court of Criminal Appeals has recently held that appellate courts are no longer to use the "exclusion of other reasonable hypothesis" analysis in assessing the sufficiency of the evidence adduced at trial. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Cr.App.1991). The *Geesa* opinion is inapplicable to this case, however,

because the Court of Criminal Appeals also held that the *Geesa* analysis would be applied only to the parties in that case and to all future cases, "but not [to] those [cases] pending on direct review or not yet final at the time of the decision,...." *Id.* at 164. The trial of the instant case was completed March 1, 1989.

There was evidence that appellant was familiar with the use of arson as a means to secure payments from insurance claims. Also, tests showed that the decedent was so physically incapacitated at the time of the fire that he could not have been the source of the fire. Appellant was overheard discussing with her daughter how to take the life of the decedent and silence a witness. Evidence shows that a witness was held against her will in an effort to prevent her from testifying. On this record, we find that any jury could have found each essential element of the crime beyond a reasonable doubt. Appellant's first point of error is overruled.

Appellant's second point of error alleges that the trial court erred by admitting evidence obtained from appellant as the result of an illegal arrest. Appellant's complaint is directed at the testimony of Deputy Horton concerning appellant's discussion of "silencing" Debbie Logan. When the conversation took place, appellant was incarcerated under an arrest warrant obtained by Deputy Horton.

Appellant asserts that the arrest warrant was not supported by probable cause because Deputy Horton's complaint contained nothing more than his conclusions. Appellant argues that the complaint filed against the appellant recited no sources for Horton's statements nor that Horton possessed personal knowledge of the matters contained therein. Appellant additionally argues that the facts in the complaint failed to provide sufficient information to support an independent determination of probable cause.

Simply answering whether the affidavit was defective, however, would not end our analysis of this point. The mere fact that evidence is discovered after an illegal arrest and the appellant was in custody does not require that the evidence be excluded from the trial. Appellant argues that the evidence should have been excluded because "but for" the arrest and the appellant being in custody at that time, the statements would not have been overheard. Reviewing courts, however, are not required to use either a per se or "but for"

rule in analyzing the admissibility of such evidence. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). The evidence will be admissible if the taint of the illegality can be purged. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Wicker v. State,* 667 S.W.2d 137 (Tex.Cr.App.1984). In determining whether the taint of illegality has been purged, courts are to consider:

1) whether *Miranda* warnings were given

2) the temporal proximity of the arrest and the statement

3) the presence of intervening circumstances; and

4) the purpose and flagrancy of the official misconduct.

*Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62.

In considering these factors, "[n]o single fact is dispositive." *Id.* at 603, 95 S.Ct. at 2261. The Court of Criminal Appeals, however, has interpreted the *Brown* opinion to stress the importance of the fourth factor. *Barber v. State,* 737 S.W.2d 824, 833 (Tex. Cr.App.1987), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). The record reveals that *Miranda* warnings were not given. The other factors, however, cause us to conclude that even if this was an illegal arrest, the taint of that illegality was purged.

Since the conversation at issue occurred at least one day after the arrest, we find that the temporal proximity factor favors the purging of the claimed taint. While there were no intervening circumstances such as a presentment before a magistrate, the statements were made voluntarily. The evidence was not developed during custodial interrogation. Appellant and her mother were alone in the jail cell when they openly discussed the "silencing" of Debbie Logan.

There is no evidence that Deputy Horton's purpose in arresting appellant was to obtain incriminating statements from her. Deputy Horton respected appellant's desire not to speak directly with any police officers. Deputy Horton did not attempt to coerce appellant into making any state-

ment. "Nothing indicates that appellant's arrest was violent or designed to 'cause surprise, fright and confusion.'" *Id.* After considering all of the factors together, we find that the taint of the arrest, if it be illegal, was overcome because the statements were made as an act of free will. The trial court did not err in failing to exclude the testimony of Deputy Horton concerning appellant's conversation with Tommie Lea Davis about preventing Debbie Logan from testifying. Appellant's second point of error is overruled.

In her third point of error, appellant asserts that the trial court erred by admitting incompetent reputation evidence at the punishment phase of the trial. Appellant's specific complaint is that the state failed to lay the proper predicate for the reputation testimony. On this basis, appellant argues that the testimony of Sheriff Blan Greet and Deputy Horton was incompetent to prove appellant's reputation.

The analysis of this point involves a two-step process. If a trial court is found to have committed error in admitting incompetent reputation evidence, a conviction may still be upheld if that error is found to be harmless. *Wagner v. State,* 687 S.W.2d 303 (Tex.Cr.App.1984). In determining whether reputation testimony was improperly admitted, we must discern whether the testimony constitutes "the kind of synthesis of observation and discussion in the community which is the basis for deeming reputation evidence reliable." *Id.* at 314.

When asked about appellant's reputation for being a peaceful, law-abiding citizen, Sheriff Greer replied that appellant's reputation was "not good." Deputy Horton answered the same question by characterizing appellant's reputation as "bad." Both officers testified that their opinions were based upon their personal dealings with appellant and discussions of appellant within the community.

The record reflects that Sheriff Greer had been the sheriff of Sabine County, appellant's county of residence, since 1965. Deputy Horton testified that in his capacity as deputy sheriff, he had been called to the appellant's residence several times. We find that the trial court acted properly in admitting the reputation testimony of officers Greer and Horton.

Moreover, even if we hold that the trial court erred in admitting the evidence, we would, nevertheless, be compelled to find that such error was harmless. In *Wagner,* the Court of Criminal Appeals held that reputation testimony based solely upon a specific incident should have been excluded. *Wagner,* 687 S.W.2d at 314. The court also concluded, however, that the error was harmless. *Id.* The court noted that the improperly admitted testimony was concise and unembellished. *Id.* Furthermore, the prosecutor made no mention of the testimony in his closing argument, emphasizing instead the violent nature of the crime. *Id.* In this case, the testimony similarly lacked any embellishment. Likewise, the prosecutor made no mention of the testimony in his closing argument. For the foregoing reasons, appellant's third point of error is overruled.

In her fourth point of error, appellant complains of the trial court's refusal to suppress evidence obtained by Deputy Turk and Deputy Horton during a warrantless search of the remains of the mobile home. Appellant contends that the search violated her fourth amendment rights and that the evidence obtained contributed to her conviction.

Appellant correctly argues that warrantless searches are permissible only under limited circumstances. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Regarding fire-damaged premises, however, the warrant requirement applies only if some privacy interest remains in the fire-damaged property. *Michigan v. Clifford,* 464 U.S. 287, 292–93, 104 S.Ct. 641, 646–47, 78 L.Ed.2d 477 (1984). The test of whether such a reasonable privacy interest remains is whether the interest advanced is one society is prepared to characterize as reasonable. *Id.* at 293, 104 S.Ct. at 646. The United States Supreme Court has expressly stated that "[s]ome fires may be so devastating that no reasonable privacy interests

remain in the ash and ruins, regardless of the owner's subjective intentions." *Id.*

In *Clifford,* the Supreme Court found that the Cliffords still retained reasonable privacy interests in their fire-damaged home, regardless of the fact that the home was uninhabitable. The court noted that the exterior of the house and a number of upstairs rooms sustained no damage and that some of the Cliffords' personal belongings remained in the house. *Id.* at 296, 104 S.Ct. at 648. Also, the Cliffords had made arrangements to secure the house against intrusion during their absence. *Id.*

Appellant's case is not analogous to the *Clifford* facts. This mobile home was the residence of appellant's daughter. The photographs of the remains reveal that the structure was so badly damaged as to preclude any reasonable expectation of privacy. Appellant, unlike the Cliffords, took no measures to secure the remains of the premises from intrusion. In fact, when Officer Turk finally located appellant's daughter, she readily signed a consent form to allow another search to be conducted. As there were neither reasonable privacy interests in the burned out remains of the mobile home nor any attempts to secure the premises from intrusion, we overrule appellant's fourth point of error.

Appellant's fifth point of error alleges that the trial court erred in failing to recuse special prosecutor Michael Ratcliff. Appellant's complaint is based upon the fact that Mr. Ratcliff was also representing the decedent's mother in civil actions arising out of decedent's death. Appellant asserts that no special prosecutor should have been appointed because there was no absence or disqualification of the duly elected district attorney. TEX.CRIM.PROC. CODE ANN. art. 2.07(a) (Vernon 1977). Appellant also complains of Mr. Ratcliff's failure to file an oath of office. TEX.CRIM. PROC.CODE ANN. art. 2.07(c) (Vernon 1977). Appellant relies upon *Loshe v. State,* 160 Tex.Crim. 561, 272 S.W.2d 517 (1954).

In *Loshe* the record revealed that the special prosecutor neither conducted the trial nor controlled the introduction of evidence during the trial. *Id.* 272 S.W.2d at 520. Appellant emphasizes that Ratcliff examined witnesses, prepared and offered documentary evidence, and argued the case at both the guilt/innocence and punishment phases. Appellant contends that these facts distinguish their case from *Loshe* and require a reversal.

We agree with appellant's contention that her case differs from *Loshe;* we, however, disagree that the trial court committed reversible error in permitting Ratcliff to serve as special prosecutor in this case. The appointment of a special prosecutor is within the discretion of the trial court. *Id.* at 520. Furthermore, appointments of special prosecutors are not predicated upon the absence or disqualification of the elected district attorney. *Lopez v. State,* 437 S.W.2d 268 (Tex.Cr.App.1968); *Fitzgerald v. State,* 722 S.W.2d 817 (Tex.App.–Tyler 1987), *aff'd,* 782 S.W.2d 876 (Tex.Cr.App. 1990). The necessity of filing an oath of office, however, applies only when the elected district attorney is absent or disqualified. *Ballard v. State,* 519 S.W.2d 426, 428 (Tex.Cr.App.1975). Finally, in cases in which the elected district attorney participates in a trial with a special prosecutor, grounds for complaint exist only if the elected district attorney fails to retain management and control of the case. *Id.* at 428. Here, although Mr. Ratcliff had an active role in the trial, the district attorney at all times retained management and control of the case. Finding no abuse of discretion, we overrule appellant's fifth point of error.

■ Appellant's sixth point of error complains that the trial court erred in failing to exclude evidence of an extraneous offense. The evidence at issue was the portion of Debbie Logan's testimony concerning appellant's role in helping burn a relative's mobile home. The trial court conducted a hearing outside the presence of the jury and admitted the testimony for the purpose of showing that the fire was not the result of mistake or accident. TEX.R.CRIM.EVID. 404(b).

■ Before evidence of an extraneous offense can be admitted, the evidence must be relevant to a material issue in the case,

an issue other than the defendant's character. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Cr.App.1990); *Plante v. State,* 692 S.W.2d 487, 491 (Tex.Cr.App. 1985). When such evidence is introduced to prove the absence of mistake or accident, that use is usually characterized as a rebuttal of a defensive theory of the case. *Montgomery,* 810 S.W.2d at 387. Evidence of extraneous offenses may be deemed relevant if the evidence is probative as to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or other similar purposes "not anticipated by the rulemakers." *Id.* at 387–88. Moreover, "[e]xtraneous offense evidence that logically serves any of these purposes is 'relevant' *beyond* its tendency 'to prove the character of the person to show that he acted in conformity therewith.'" *Id.* (Emphasis in original).

■ However, even if the evidence of the extraneous offense is deemed relevant, the trial court may still exclude the evidence if the prejudicial effects of that evidence substantially outweigh the probative value thereof. *Id.* The analysis of the evidence is a matter for the trial judge's determination and will be overturned only upon a showing of a clear abuse of discretion. *Crank v. State,* 761 S.W.2d 328, 342 (Tex.Cr.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989).

■ As to the former inquiry, we can overturn the trial court's decision only when it is apparent that the court acted unreasonably or admitted the evidence due to "common prejudice, not borne out in reason." *Montgomery,* 810 S.W.2d at 391. Concerning the latter inquiry, we must weigh a number of factors to discern whether the evidence is so prejudicial as to warrant a reversal. The relevant factors include such considerations as whether: (1) the ultimate issue was seriously contested by the opponent of the evidence, (2) the state had other convincing evidence to establish that ultimate issue to which the disputed evidence is allegedly relevant, (3) the compelling nature, or lack thereof, of the disputed evidence, (4) the likelihood that the disputed evidence is of such a

nature which would impair the efficacy of a limiting instruction. *Id.* at 392–93.

Appellant's contention that the evidence was admitted improperly is without merit. We hold that the evidence was relevant and that the probative value of the evidence was not outweighed by any prejudice. Appellant vigorously disputed the ultimate issue of guilt by arguing that the fire was either a tragic mistake or an accident. Appellant introduced expert testimony asserting that the fire was not of incendiary origin, and therefore the fire was accidental. Appellant emphasized the fact that the decedent frequently smoked cigarettes, thereby injecting the explanation that a burning cigarette ignited the fire.

The state had no witnesses to the ignition of the fire. Much of the state's expert testimony was contradicted by the testimony of appellant's experts. We find that the state demonstrated a considerable need for the admission of the evidence. The evidence was compelling because of the similarity of the fires involved. In both fires, mobile homes burned and insurance proceeds were involved. We find no abuse of discretion in the trial court's admission of the testimony for the purpose of rebutting the defensive theory of mistake or accident. Appellant's sixth point of error is overruled.

Appellant's seventh point of error asserts that the trial court should have granted appellant's motion for mistrial based upon a question asked by the prosecutor. The prosecutor asked Roy Logan, "That wasn't the day that Tommie Lea drugged him up to sign his divorce papers was it, or was it?" Appellant's objection was sustained and the court instructed the jury to disregard the question. Appellant's subsequent motion for mistrial was denied.

When a prosecutor asks an improper question, the court may cure or render the error harmless by striking the question and instructing the jury to draw no inferences from the question. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979 [Panel Op.] 1979). The instruction will not cure the error if the question asked is of such a nature that it was clearly calculated to

inflame the minds of the jurors and was of such character as to suggest the impossibility of withdrawing the impression produced in the minds of the jurors. *Id.* at 892–93. In determining whether a question may be cured by an instruction to disregard, a reviewing court also considers whether the prosecutor exercised bad faith in posing the question. *Id.* at 893.

We do not find bad faith in the prosecutor asking this question. The record reveals that Roy Logan testified that he had found Tommie Lea and the decedent alone in their mobile home. On the instant occasion, the decedent was overdosed on Valium. Considering that the evidence already showed that Tommie Lea had deceived her late husband about her pregnancy to facilitate his divorce from his former wife, it is not unreasonable that a prosecutor would inquire as to whether drugs played a part in that scheme. While the question may have been improper, we find that any error was cured by the court's instruction to disregard. Appellant's seventh point of error is overruled.

Appellant's eighth point of error alleges that the trial court erred by allowing the prosecutor to engage in manifestly improper jury argument. The prosecutor's argument concerned Brenda Turley's testimony about having overheard appellant express remorse for murdering the decedent. During closing argument, the prosecutor characterized this testimony as "direct" evidence of appellant's guilt. Appellant's objection to this argument was overruled.

The difference between circumstantial and direct evidence is that the former is direct proof of a minor fact which, through logical inference, demonstrates the truth of the fact to be proved. *Crawford v. State,* 502 S.W.2d 768, 769 (Tex.Cr.App.1973). Direct evidence, however, is "proof of facts by witnesses who saw the acts done or heard the words spoken." *Bruenger v. Burkett,* 364 S.W.2d 453, 455 (Tex.Civ. App.–Eastland 1963, no writ). Direct evidence applies directly to the ultimate fact to be proved. *Crawford,* 502 S.W.2d at 769. The testimony of Brenda Turley was direct evidence. Assuming that the testi-

mony was only circumstantial evidence of appellant's guilt, a finding that the prosecutor's argument was improper would not require a reversal.

Improper jury argument constitutes reversible error only if, in the light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts which are harmful to the accused. *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980). The prosecutor's argument in this case violated no mandatory statute. This argument was neither extreme nor manifestly improper. *See Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.1973) (manifestly improper for prosecutor to state that defense counsel was lying to the jury); *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972) (manifestly improper for prosecutor to comment that he was glad that he did not have to represent people of defendant's caliber). At most, the prosecution may have mischaracterized the evidence. The "mischaracterization," however, injected no new facts into the case.

We conclude from the totality of the record that no reversible error was committed. Appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

On original submission, we held that the State had introduced evidence sufficient to convict Appellant for the offense of murder. Appellant's murder conviction was affirmed.

■ In her motion for rehearing, Appellant urges two grounds for review. First, she contends that the evidence is insufficient to support her conviction. The thrust of Appellant's first ground is that Appellant's expert expressed the view that no flammable liquid had been used to ignite the fire.

Appellant's expert did state that, in his opinion, no accelerant was used in the fire. Appellant's expert also acknowledged, how-

ever, that he could not dispute a chemist who had analyzed the debris and found that a petroleum product had been used.[1] The State's expert testified that a flammable liquid had been used, that a pour pattern existed at the scene of the fire, and that a chemical analysis performed with a gas chromatograph revealed the presence of a flammable liquid within the C12 to C20 range. Moreover, another of Appellant's witnesses, a chemist, stated that substances which registered on the gas chromatograph in the C12 to C20 range were flammable. From this record, we conclude that the evidence was not controverted that a flammable liquid had been used to start the fire.

Appellant additionally alleges that this Court erred in concluding "that the state need not refute every reasonable hypothesis other than the guilt of the accused." First, our statement of this legal principle in our opinion noted that the State having the burden of proof "does not mean ... that the state must *directly* refute every purportedly reasonable hypothesis." *Jackson v. State*, 672 S.W.2d 801, 804 (Tex.Cr. App.1984) (emphasis added). The Court of Criminal Appeals has expressly stated that while evidence relied on must exclude every other reasonable hypothesis except the guilt of the accused,

> This does not mean that if evidence is presented at trial suggesting innocence, the jury cannot find the defendant guilty. Juries are charged with the responsibility of resolving factual questions. In this process, a jury may reject evidence and testimony which suggests innocence. Thus, 'the rule that evidence must exclude every reasonable hypothesis of innocence refers to evidence which the jury believes and relies upon to support its verdict.' (citation omitted.)

*Castro v. State*, No. 835–90, Slip op. at 3, 1992 WL 1131 (Tex.Cr.App. January 8, 1992). In this case, the jury relied upon

evidence sufficient to support Appellant's conviction. We find no merit in Appellant's first ground for rehearing.

■ Appellant, by her second ground, contends that the trial court erred in admitting reputation testimony from Sheriff Greer and from Deputy Horton. The focus of Appellant's argument is that the testimony was based solely upon the officers' conversations with other members of the community about Appellant's bad acts, contrary to the holding in *Hernandez v. State*, 800 S.W.2d 523 (Tex.Cr.App.1990). Appellant alleges not only that the admission of the testimony was erroneous, but also that the error committed was harmful.

We disagree with Appellant's assertions. First, we reiterate our holding that the trial court properly admitted the reputation testimony. Sheriff Greer expressly stated that he based his opinion on both his personal dealings with Appellant *and* discussions he had heard from, or engaged in with, numerous other people. Deputy Horton likewise stated that he had heard Appellant's reputation discussed. While Deputy Horton did admit that he based his opinion upon his personal dealings with Appellant, he also stated that what he had heard discussed would not change his opinion of Appellant's reputation. These witnesses' opinions were concise, without embellishment and without reference to an extraneous offense. While the predicate could have been laid more precisely for Deputy Horton's testimony, we adhere to our conclusion that the trial court committed no error.

■ Even if we assume that Deputy Horton's testimony should have been excluded, we would still be required to conclude that the error by the trial court was harmless. The *Hernandez* opinion does not mandate a reversal of Appellant's conviction. In *Hernandez*, the Court of Criminal Appeals expressly stated that when "the *only* evidence presented at the punishment phase of the trial was the *improperly* admitted reputation evidence, one cannot

---

1. The pertinent exchange between the prosecutor and the expert went as follows:

    Q: And if the chemist that prepared the report said there was a petroleum product used, you

would not be in a real good position to disagree?

A: No, sir, I wouldn't disagree with him.

say beyond a reasonable doubt that the error did not contribute to the punishment." 800 S.W.2d at 525 (emphasis added).

At the punishment phase of this trial, however, the State introduced the testimony of Sheriff Greer, Deputy Horton, and Mrs. Oyler Smith, the mother of the decedent. Smith stated that at her son's funeral, Appellant and Tommie Lea Davis showed no remorse and that "[a]fter the burial they were outside the cemetery laughing and talking like they had been to a big party." Appellant has not objected to the admissibility of Smith's testimony. Therefore, we conclude that any error committed was harmless, because there was testimony other than that of Greer and Horton offered by the State at the trial's punishment phase. Appellant's second ground for review is overruled.

For all the aforementioned reasons, Appellant's motion for rehearing is overruled.