James **JACKSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 891–83.

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

Allen C. Isbell (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Calvin Hartmann, Doug Davis and Timothy G. Taft, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW**

TOM G. DAVIS, Judge.

Trial was before the jury upon appellant's plea of not guilty of burglary of a building. After the jury found appellant guilty, the court assessed punishment, enhanced by a prior conviction, at five years. The conviction was reversed by the Court of Appeals for the Fourteenth Supreme Judicial District (Houston). We granted

the State's petition for discretionary review in order to examine the Court of Appeals' holding that the evidence was insufficient and in order to examine the standard of review the Court used in reaching that holding.[1]

Appellant was convicted as a party of entering Shirley's Lounge on March 13, 1981 with intent to commit theft and without the effective consent of owner Shirley Fontenot.

At trial, Evelyn Motton testified that on the evening of the offense while at her apartment she overheard appellant, Albert Julien, and her boyfriend, Larry Dodson, planning a burglary. According to Motton, appellant said, "he didn't care how he got the money—he would do it anyway." She heard Dodson say he had already cased the premises in question.

Motton left the apartment and returned approximately thirty minutes later. Dodson, Julien, and appellant were in the apartment and so were various items, including potato chips, pickled pigs' feet, candy, an adding machine with an extension cord, and two billfolds. Sometime between Motton's return and the arrival of police officers, one Ben Johnson was admitted into the apartment.

The police arrived and arrested Dodson and Julien for the burglary of Shirley's Lounge. The officers did not see any of the merchandise and did not search Motton's apartment. Motton testified that when the police left she and appellant moved the merchandise into a vacant apartment in the complex.

Motton went to see Curtis Payne who, together with Fontenot, operated Shirley's Lounge. Motton tried to convince Payne not to press charges against Dodson in exchange for Motton returning the items stolen from the lounge. It is unclear from the record whether Motton and Payne ever reached an agreement.

Motton returned to the vacant apartment, but the goods had been removed.

She testified that only she and appellant knew where the goods were stored.

Sabrina Boudreaux lived across the street from Shirley's Lounge. At approximately 11:00 p.m. on the 13th she saw Dodson and Julien breaking into the establishment. Boudreaux did not see anybody else enter the lounge nor did she see anybody near the fence at the side of Shirley's Lounge, but she testified that she did not "go around there by the fence" and that the area by the fence was dark. Boudreaux called Payne and told him what she saw.

Payne immediately went to the lounge with his son. He looked into the window and saw Dodson and Julien holding a cash register.

When Dodson and Julien saw Payne they dropped the register and ran from the lounge. Payne followed them to the fence. He saw a third man standing on the other side of the fence. Stacked between the building and the fence, Payne observed candy, gum, soda water, and pigs' feet. Payne later examined his stock and found some items missing.

Officer E.W. Cox of the Houston Police Department was one of the policemen investigating the burglary of Shirley's Lounge. Late in the evening of the 13th or early in the morning of the 14th he received information causing him to search for appellant in connection with the burglary.

Cox and his partner proceeded to the Della Motel apartment complex, "where a lot of stolen merchandize and things have a tendency of turning up from all over the city."

Appellant was discovered in the backseat of a blue Lincoln Continental eating a pickled pig's foot. Cox saw a jar of pickled pigs' feet between appellant's legs.

Cox arrested appellant and brought him to Shirley's Lounge. Payne identified the pigs' feet as his. When Cox inquired how he could be so sure, Payne took Cox into the lounge and, "sure enough he had a

1. Sufficiency of the evidence was also the only    issue on appeal.

couple more gallons just like them, that he had just like the ones the man was eating on."

Appellant took the stand and denied any involvement in the burglary. He stated that he arrived at Motton's apartment five minutes before officers came and arrested Dodson and Julien. Appellant testified that he purchased the jar of pigs' feet on the way to the Della Motel from a casual acquaintance who had flagged down the car in which he was a passenger.

Terry Marlboro, another passenger in the car that evening, took the stand and confirmed appellant's story about the purchase of the pigs' feet.

Julien testified and admitted that he and Dodson burglarized Shirley's Lounge. He stated that appellant took no part in the burglary of the lounge or the planning of the burglary.

In reversing appellant's conviction the Court of Appeals stated that in circumstantial evidence cases, "the appellate court views the evidence in light of the presumption that the accused is innocent." Further, the Court opined that, "A conviction will not be sustained on appeal if ... the evidence does not produce *in the mind of the appellate court* a firm conviction or 'moral certainty' of the guilt of the Appellant." (Emphasis added.)

Keeping the above considerations in mind, the Court of Appeals held that, "the cumulative evidence which connects appellant with the burglary of Shirley's Lounge is so tenuous that *we are unconvinced, to a 'moral certainty,'* that he is guilty." (Emphasis added.)

In reaching its decision the Court of Appeals seemed particularly impressed by: some alleged inconsistencies in Motton's testimony on the question of whether appellant alone or appellant and Johnson helped her move the merchandise to a vacant apartment; the lack of first-hand information possessed by Fontenot and Payne relative to appellant's involvement in the burglary when they directed Officer Cox to arrest appellant; the apparently

reasonable and uncontradicted defense "hypothesis" concerning appellant's late-night purchase of pigs' feet.

The Court of Appeals' decision was handed down *before* the mandates issued in this Court's opinions in *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983), *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.App.1983), *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983), and *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983).

In those cases, this Court held that the standard for reviewing sufficiency of the evidence questions on appeal is the same for direct and circumstantial evidence cases. Further, the relevant standard is the one developed by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to-wit, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

In *applying* the above standard of review the Court agreed that the "exclusion of outstanding reasonable hypotheses" test would still be utilized. The opinion on rehearing in *Denby* noted that, "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." 654 S.W.2d at 456. Similarly, the *Denby* concurrence stressed that, "Logic dictates that if there is a 'reasonable hypotheses' other than the guilt of the accused, then it cannot be said that the guilt has been shown 'beyond a reasonable doubt.'" 654 S.W.2d at 457. In *Wilson, Denby, Freeman,* and *Carlsen,* this Court also firmly rejected the notion of a presumption *on appeal* of an accused's innocence in circumstantial evidence cases.

■ Turning again to the instant case it is obvious that the Court of Appeals used a standard of review that is no longer valid. The court presumed appellant's innocence and considered whether *the Court* was convinced to a moral certainty that all other reasonable hypotheses had been excluded.

**804**

  The Court's concerns about the alleged inconsistencies in Motton's testimony were similarly unfounded. The trier of fact was free to resolve any inconsistencies in favor of Motton.

Moreover, any controversy centering around the information leading to appellant's arrest was not directly relevant to the sufficiency question in this case and was not developed fully at trial.

Finally, the Court of Appeals evidently thought that the State had to directly refute the purportedly "reasonable hypothesis" raised by defense evidence to the effect that appellant purchased the jar of pigs' feet found in his possession. The rational triers of fact chose to believe the State's evidence and to disbelieve appellant and his witness.

Reviewing the State's evidence again, we find that:

1. Appellant and two companions were overheard planning a burglary on the same evening a burglary occurred at Shirley's Lounge.
2. Thirty minutes later, appellant and his companions were in possession of several items of merchandise they had not possessed when planning the burglary.
3. Two eyewitnesses identified appellant's companions as the burglars inside Shirley's Lounge.
4. One eyewitness saw a third man on the other side of a fence nearby the lounge.
5. One eyewitness saw several items the burglars were stealing from his lounge.
6. Some of these items matched the items seen in the possession of appellant and his companions.
7. After the police arrested his companions, appellant helped to move the merchandise in question to a vacant apartment.
8. When appellant was arrested on the evening of the burglary he was in possession of a jar of pickled pigs' feet. Several jars of pigs' feet of the same brand possessed by appellant were missing from the burglarized premises.

  The evidence was sufficient to support the conviction.

Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.