Joyce Ann VAN GUILDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–83–00109–CR.

Court of Appeals of Texas, San Antonio.

July 25, 1984.

Richard Langlois, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a conviction for attempted murder. The appellant was found guilty in a jury trial for this offense and was assessed punishment by the jury at twenty (20) years' confinement in the Texas Department of Corrections.

The appellant was indicted for five offenses growing out of one continuous transaction. One indictment was for the offense of murder, and the other four indictments, including the one on which this appeal is based, were for the offense of attempted murder. By agreement, a joint trial was held on all five indictments. The appellant entered a plea of not guilty by reason of insanity to each of the five indictments. Inexplicably, the jury found the appellant guilty of the offense that occurred first in time, and not guilty by reason of insanity on the other four indictments.

There is virtually no dispute as to the evidence of the commission of the five offenses. On the date in question at approximately 11:00 a.m., Sterling Ditzler was sitting on a sofa in the living room of his

duplex-type apartment watching television. The appellant, a tenant in the same apartment complex, abruptly entered the apartment and yelled, "You're going to pay, you killed her," and shot Ditzler with a pistol, wounding him. The appellant then shot two women in an adjoining kitchen; one was seriously wounded, and the other died. Ditzler ran out and entered an adjacent apartment. Appellant then appeared in the second apartment and repeated, "You killed her, and you're going to pay for it," and she shot and wounded two occupants in that apartment. Appellant then threw the pistol under a tree as she fled the premises. Appellant was taken into custody some three-quarters of a mile away from the scene. She had jumped or fallen off a high embankment to the apron of the interstate highway. As a result of the fall, appellant had sustained a fracture to both legs and her vertebra.

Appellant brings two grounds of error:
GROUND OF ERROR NO. 1:
THE VERDICT OF THE JURY IS CONTRARY TO THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE AS TO BE MANIFESTLY WRONG AND UNJUST.
GROUND OF ERROR NO. 2:
THE VERDICT OF THE JURY IS CONTRARY TO THE EVIDENCE AS A MATTER OF LAW BECAUSE THE APPELLANT ESTABLISHED THE AFFIRMATIVE DEFENSE OF INSANITY.
Appellant's only evidence was offered on the issue of insanity. The evidence was lengthy, convincing and uncontroverted.

The evidence consisted of testimony by friends, the appellant's brother, and medical personnel. Appellant's medical history established that her father was an alcoholic who abused her mother. Appellant was sexually molested at an early age, and an incestuous relationship was attempted by a relative. Appellant had difficulty with her sexual identity, preferring to wear male clothes and adopting masculine mannerisms. While in the military, she developed a lesbian relationship which conflicted with her religious beliefs.

Dr. William Gillian testified that he was a psychiatrist and a member of the medical board that recommended the appellant's discharge from the Army. She was discharged on the basis of being medically unfit because of a psychiatric condition diagnosed as schizophrenic chronic with differential type. She was found to be thirty percent (30%) medically disabled.

At the time of her arrest, appellant was in a state of confusion. She did not know who she was, but she made attempts to conceal the fact that she was a female. She indicated, "Someone told me they were after me; someone told me I had to save the children." She thought she was in a jogging race such as the "Chariots of Fire." She was walking along the road when she perceived a big green car with a fat lip chasing her. The doctors excluded the possibility of malingering.

Dr. Paul Mohl testified that he was a psychiatrist on the staff of the Medical Center Hospital, where appellant was brought for treatment following her arrest. He stated appellant's thinking was not logical, and she expressed unrealistic ideas, such as being a biblical character named Jacob. She also expressed ideas of persecution for homosexuality. Dr. Mohl felt that appellant was psychotic of the schizophrenia type.

Dr. James O. Sherman, a psychologist employed by Bexar County, Texas, testified that he administered a battery of psychological tests to the appellant. Based on these tests and other information assembled by Dr. Sherman, he reached a diagnosis of schizophrenic disorder of the paranoid type. He was further of the opinion that on the date in question appellant was not able to fully appreciate the wrongfulness of her acts nor was she able to conform her behavior to the standards of law because of the delusions she was suffering.

Dr. John Sparks, the Bexar County psychiatrist, testified that he performed extensive psychiatric examinations of appellant upon orders of the court. He stated that appellant had a mental disease which he classified as schizophrenia of the paranoid

type. It was Dr. Sparks' professional opinion that on the date in question, the appellant, as the result of a mental disease or defect, did not know that what she was doing was wrong, and she was incapable of conforming her conduct to the laws of society at that time.

Dr. Franklin Redmann, a private physician practicing in the specialty of psychiatry, was then asked a hypothetical question based on all the facts adduced at the trial. The doctor concluded that the person described in the facts would be unable to tell right from wrong and would be unable to conform to what was right, as a result of mental disease or defect.

The State offered no rebuttal testimony on the issue of insanity. The State argues instead, that this particular defensive issue is an affirmative defense which the State is not required to negate. The State cites *Madrid v. State*, 595 S.W.2d 106 (Tex.Crim. App.), *cert. denied*, 449 U.S. 848, 101 S.Ct. 134, 66 L.Ed.2d 58 (1980); *Graham v. State*, 566 S.W.2d 941 (Tex.Crim.App.1978).

 The rule that the State is not required to negate affirmative defenses, though mentioned in *Madrid*, derives instead from TEX.PENAL CODE ANN. § 2.04(b) (Vernon 1974). The rule actually states in its entirety, "The prosecuting attorney is not required to negate the existence of an affirmative defense *in the accusation* charging commission of the offense." (Emphasis added). The statute means that the State does not have to plead in its indictment the negative of an affirmative defense. It does not give the State a free ride proof-wise if the affirmative defense is raised by credible evidence.

In *Madrid*, the appellant contended he had established his defense of insanity as a matter of law because the State produced no evidence in rebuttal. *Madrid* can be distinguished. As Judge Onion pointed out in his opinion on rehearing, appellant had one witness on the issue of insanity. He was a psychiatrist who testified he had only examined the appellant for one-and-a-half hours, and did not have the benefit of psychological testing. The State then called in rebuttal, another doctor who had

practiced medicine and psychiatry for fifty years. This doctor testified he could not diagnose legal insanity based on only a one-and-a-half hour examination without psychological testing. The jury apparently concluded that appellant had not established insanity by a preponderance of the evidence, i.e., the greater weight of *credible* testimony.

By contrast, in the present case, the defense offered five doctors with unimpeachable credibility. No effort was made to lessen the impact of the doctor's testimony through cross-examination. The attorney for the State, in a very commendable effort to comply with the requirement that exculpatory evidence be revealed, made a statement for the record out of the presence of the jury. He advised that the State had retained another doctor as a consultant. This doctor reviewed the material that had been available to Dr. Sparks and Dr. Sherman, and concurred in their diagnosis that at the time of the offense, the appellant was suffering from a paranoid schizophrenic condition that was the cause of her not being able to conform her conduct to the requirements of the law. The sheer weight and believability of the appellant's evidence and testimony of insanity distinguishes our present case from *Madrid*.

The court in *Graham*, explored situations where a jury verdict of sanity should be upheld in spite of medical testimony to the contrary. The medical testimony in that case was not without equivocation, and the opportunity of the appellant's doctors to observe him was remote from the date of the offense. In our case at bar, Dr. Mohl testified that the psychiatric staff of the Medical Center Hospital was involved with the appellant from the moment she was brought to the emergency room. In *Graham*, the jury was able to consider the actions of the defendant before and after the offense as bearing on his mental condition. In our case, the landlady of the apartments where the appellant lived noticed something wrong with the appellant the day before the offenses occurred. The appellant had met a new friend named Jane, and had gotten the idea at first, that

Jane was her long lost half sister, and later decided she was her twin sister. The appellant told the landlady that she remembered killing a man because he was taking her sister away. On the morning before the offenses occurred, the appellant knocked on the landlady's door about 7:00 o'clock in the morning. Her voice was louder than usual. When she realized that the landlady had company, the appellant said, "That's all right," and went away crying.

The first individual to see the appellant after the offenses was a paramedic with the San Antonio Fire Department. He testified they had placed the appellant on a stretcher and when they started to raise the stretcher, she took her wallet out of her back pocket and threw it on the ground. The witness asked her why she had done it, and she denied throwing out the wallet though it was done in the witness's presence. The wallet was retrieved and returned to the appellant, and she threw it away again. The paramedics experienced difficulty in persuading the appellant to go to the hospital though she was in obvious need of emergency treatment. She said she did not need help and that the paramedics needed to go down to the apartments and help the children. A police officer, who had known the appellant on previous occasions, came to the ambulance. The appellant stated that she did not know who she was. When asked what had happened, the appellant said, "Someone told me that ... someone told me that they were after me ... someone told me I had to save the children. I had to go down there and get them. They were hurting the children. I had to stop it."

■ Attempts to conceal incriminating evidence or avoid detection or arrest can indicate knowledge of wrongful conduct and therefore evidence of present sanity. *Graham, supra,* at 951. Here the appellant left her pistol under a tree at the scene of the offenses. When asked about the weapon while she was in the ambulance, the appellant was able to describe it, and told the officer exactly where the gun could be found. She told the officers her name was "Kevin." This was not an attempt to avoid arrest but some vague effort at concealing her gender.

■ *Graham* stands for the proposition that it is not necessary for the State to present expert medical testimony that a defendant is sane in order to counter the defense experts. The jury may accept lay testimony over that of experts. The facts testified to by the lay witnesses in *Graham,* furnished an adequate basis for the jury's conclusion that the defendant was sane. The facts developed by the lay testimony and the medical testimony in our case differ measurably from those in *Graham,* and compel a different conclusion. The State conceded on oral submission that the record contained no lay testimony supporting a finding of sanity.

■■ Jurors may reject the opinion of experts if it does not comport with their ideas of sound logic. *Maryland Casualty Co. v. Hearks,* 144 Tex. 317, 190 S.W.2d 62, 64 (1945). Jurors are not required to give conclusive effect to the opinion of experts, but they may not arbitrarily disregard such testimony. Here there is no testimony, either medical or lay, upon which reasonable jurors could conclude that the appellant was sane at the time of the offense.

■ We recognize the rule in most other jurisdictions that inconsistent verdicts do not require reversal. *See Ruiz v. State,* 641 S.W.2d 364, 366 (Tex.App.—Corpus Christi 1982, no pet.) and cases cited therein. We do not rely on the inconsistency of the verdicts as a reason for reversal of this particular verdict. We simply note that the evidence in the record that we feel overwhelmingly preponderates for insanity was the same evidence that so persuaded the jury on four other verdicts.

■ The State contends that this court does not have jurisdiction over the fact issue of great weight and preponderance of the evidence, *citing White v. State,* 591 S.W.2d 851, 855 (Tex.Crim.App.1979). Judge Onion explained in *White* that the court of criminal appeals did not have jurisdiction to consider complaints that the verdict is against the weight and preponder-

ance of the evidence "as would a court of civil appeals" under TEX. CONST. art. V, § 6. Section 6 has been amended since *White* to give courts of appeals the same fact jurisdiction in criminal cases. *White* is now authority that this court does have jurisdiction over such a fact question, and we here hold that we do. *Minor v. State,* 653 S.W.2d 349, 351 (Tex.App.—San Antonio 1983), *pet. ref'd,* 657 S.W.2d 811; *Schuessler v. State,* 647 S.W.2d 742, 748 (Tex.App.—El Paso 1983, pet. granted); TEX.CODE CRIM.PROC.ANN. art. 44.25 (Vernon Supp.1984). The only question that appears to have been left open is the conclusiveness of the decisions of the courts of appeals on questions of fact. *Minor v. State,* 657 S.W.2d at 812.

■ Acknowledging that we have jurisdiction of weight and preponderance fact issues, we do not reach that particular question. The general verdict of the jury finding appellant guilty of attempted murder, necessarily included a finding that appellant was legally sane at the time of the offense. We believe there is no evidence to support this finding, and we hold that appellant did, in fact, establish insanity as a matter of law. We sustain the appellant's ground of error number two that the verdict of the jury is contrary to the evidence as a matter of law.

We reverse the judgment of the trial court and here render judgment that the appellant is not guilty by reason of insanity. The trial court shall retain jurisdiction over the appellant for disposition under TEX.CODE CRIM.PROC.ANN. art. 46.03, § 4(d) (Vernon Supp.1984).

Considering all of the evidence, we further believe that the finding by the jury of the vital fact of sanity is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Were we to reach the great weight and preponderance of the evidence point, we would likewise sustain it, which would result in a remand for a new trial.