**Tommie L. DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–89–00149–CR.**

Court of Appeals of Texas, Tyler.

Jan. 16, 1992.

Opinion on Motion for Rehearing June 22, 1992.

Discretionary Review Refused Sept. 30, 1992.

Bill Warren, Center, for appellant.

Charles Mitchell, Dist. Atty., San Augustine, for appellee.

RAMEY, Chief Justice.

This is an appeal of a conviction for murder. TEX. PENAL CODE ANN. § 19.01(a) (Vernon 1974). Appellant Tommie Lea Davis was convicted with her mother, Faye Logan, in a consolidated trial. A jury assessed punishment at fifty years in the Texas Department of Corrections. We will affirm.

On December 18, 1986, a fire destroyed the residence of appellant Davis and her husband Kyle Davis. Kyle Davis died in the fire. The following day, Deputy Fire Marshall Donald Turk and Deputy Sheriff

Bill Horton investigated the scene of the fire. From visual observations, Officer Turk believed that the fire was a result of arson. These initial conclusions were bolstered by laboratory reports indicating the presence of a flammable liquid. Later, police officers interviewed Debbie Logan, appellant Davis' sister-in-law and Faye Logan's daughter-in-law. Debbie Logan informed the police that she had overheard appellants discussing a plan to kill the decedent in a fire. The appellant was thereafter indicted for the murder of Kyle Davis.

■ Appellant asserts seven points of error.[1] Appellant, by her first point of error contends that the evidence is insufficient to prove guilt as alleged in the indictment. Appellant relies upon *Baugh v. State*, 776 S.W.2d 583 (Tex.Cr.App.1989) and *O'Keefe v. State*, 687 S.W.2d 345 (Tex. Cr.App.1985), emphasizing their similarity with the instant case in that they are arson cases, founded upon circumstantial evidence, and with conflicting expert testimony concerning the origins of the respective fires.

■ While *Baugh* and *O'Keefe* are factually similar, they are not controlling here. Appellant places emphasis upon the fact that expert witnesses disagreed as to the origin of the fire here as well as in the cited cases. Disagreement between experts is not dispositive. The jury determines the appropriate weight to accord expert testimony. *Coxson v. Atlanta Life Ins. Co.*, 142 Tex. 544, 179 S.W.2d 943 (Tex. Comm'n App.1944, opinion adopted). Jurors may reject expert testimony if such testimony fails to comport with the jurors' concepts of sound logic. *Maryland Casualty Co. v. Hearks*, 144 Tex. 317, 190 S.W.2d 62, 64 (1945); *Van Guilder v. State*, 674 S.W.2d 915, 919 (Tex.App.—San Antonio 1984), *aff'd*, 709 S.W.2d 178 (Tex. Cr.App.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). In choosing to disregard expert testimony, the jury is constrained only by the requirement

that any action taken must be pursued in a nonarbitrary manner. *Van Guilder*, 674 S.W.2d at 919.

The appellant's expert investigated the scene of the fire some five months after the incident occurred. This expert testified that he believed that the fire started in the living room area of the home. The expert based his opinion upon a damaged wood-frame couch. Only one of the wooden arms of the couch was warped. Additionally, the expert noted that the fire had melted only one side of an air conditioning duct located directly under the couch. From these observations, the expert concluded that the fire was probably started by some accidental means, such as the dropping of a lit cigarette. The expert's opinion was that the fire had no incendiary origin.

The evidence was not controverted that a flammable liquid had been used to start the fire. The state contradicted appellant's expert evidence by demonstrating that at the time of its original investigation, immediately after the fire had occurred, the wood frame couch and air conditioning duct exhibited none of the damage upon which the defense expert based his opinion. The state also offered proof that the decedent's body tested at a level of drugs and alcohol so high as to deprive decedent of all motor functions, including the smoking of cigarettes. The jury chose to believe the state's proof that the fire was the result of arson. In light of the entire record, we find no arbitrary conduct in the jury's verdict.

While appellant's case has factual similarities to both *O'Keefe* and *Baugh*, it is distinguishable. In *O'Keefe*, the Court of Criminal Appeals overturned appellant's conviction because the state had shown merely that the property destroyed belonged to appellant and that appellant was observed leaving the scene shortly before the discovery of the fire. *O'Keefe*, 687 S.W.2d at 349. The Court of Criminal Appeals overturned appellant Baugh's conviction due to a lack of incriminating evidence.

---

**1.** We have assigned new numbers to appellant's points of error for the purpose of addressing them. Points of error one through seven in this opinion correspond respectively to points one, three, five, seven, nine, eleven, and twelve in appellant's brief.

*Baugh,* 776 S.W.2d at 585. The court emphasized the lack of direct evidence that the appellant had set the fire and the absence of any witnesses to the ignition of the fire. *Id.* The court also stressed that the circumstantial evidence was insufficient to connect appellant to the fire. *Id.* Regarding the circumstantial evidence, the court noted that there had been no verbal threats by appellant to set a fire, that there were no suspicious circumstances concerning insurance coverage, and that no suspicious paraphernalia was found at the scene of the fire. *Id.* at 585–86.

The circumstantial evidence in this case is much stronger than in *Baugh* and *O'Keefe.* There was uncontradicted evidence that appellant induced the deceased to marry her by claiming pregnancy although she had previously undergone a complete hysterectomy, whereupon she immediately arranged to become the beneficiary of a $100,000 insurance policy on the deceased's life, his corporate stock and the profit-sharing benefits from his former employer. There, likewise, was testimony that on the evening after decedent's death, appellant was in a bar telling Kathryn Bazar that "she was coming into a sum of money, ... approximately $500,000." Mrs. Bazar, the owner of the bar, said appellant expressed no remorse over her husband's death, but rather seemed primarily interested in using her newly acquired money to buy into the witness' business, or alternatively, to open her own bar to compete with Bazar's.

The record also reflects that the night before the fire occurred, a neighbor noticed appellant and her mother removing boxes from the Davis residence. Later testimony revealed that many objects that had been in the Davis home were in Faye Logan's home. Even more damaging was the testimony of witness Brenda Turley. Mrs. Turley related the story of an incident that occurred at the funeral home after decedent's death. Mrs. Turley stated that appellant Davis was standing at the casket which contained decedent's body. Apparently unaware that she might be heard by Mrs. Turley, appellant audibly uttered the inquiry, "Why did I do it?".

Furthermore, witness Debbie Logan described a conversation which involved appellant and her mother that occurred in Faye Logan's home. Witness Logan stated that approximately one week before the fire, she overheard appellant and Faye Logan discussing how "they could use lighter fluid and it wouldn't be traced."

In addition, Deputy Bill Horton had jailed appellant and her mother in connection with the crime charged. While appellant was in jail, Deputy Horton overheard appellant and her mother discussing ways to ensure the silence of Debbie Logan as a witness in this trial. There was other evidence that revealed that witness Logan was held in a motel room against her will in an effort to prevent her from testifying against appellant. While this case is based on circumstantial evidence like *Baugh* and *O'Keefe,* the circumstantial evidence herein was more extensive than the evidence adduced in those two cases.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When viewing the evidence in that light, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Buxton v. State,* 699 S.W.2d 212, 213 (Tex. Cr.App.1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). Moreover, "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding." *Denby v. State,* 654 S.W.2d 457, 464 (Tex.Cr.App. 1983) (panel op). This does not mean, however, that the state must directly refute every purportedly reasonable hypothesis. *Jackson v. State,* 672 S.W.2d 801, 804 (Tex. Cr.App.1984). When a case contains conflicting evidence, the jurors, as rational triers of fact, may choose which evidence to believe. *Id.* In reviewing the jury's verdict, we are not to base our decision upon whether we are convinced to a moral cer-

tainty that each and every other reasonable hypothesis was excluded.[2] *Id.* at 803.

The two hypotheses that the deceased, Kyle Davis, initiated the fire by dropping a burning cigarette on the couch or that the fire was started by Davis' attempt to commit suicide were both refuted by the undisputed expert testimony that Davis' alcohol and drug condition at the time of the fire had rendered him unable to function physically. Likewise, the hypothesis that the fire was nonincendiary was refuted by the uncontradicted expert testimony that the residue collected by the state arson investigator from the debris in the living room of the deceased's mobile home tested to be a "flammable" liquid. On this record, we find that any jury could have found each essential element of the crime beyond a reasonable doubt. Appellant's first point of error is overruled.

■ Appellant's second point of error alleges that the trial court erred by admitting evidence obtained from appellant as the result of an illegal arrest. Appellant's complaint is directed at the testimony of Deputy Horton concerning appellant's discussion of "silencing" Debbie Logan. When the conversation took place, appellant was incarcerated under an arrest warrant obtained by Deputy Horton.

Appellant asserts that the arrest warrant was not supported by probable cause because the complaint filed against the appellant contained nothing more than Deputy Horton's conclusions. Appellant argues that the complaint recited no sources for Horton's beliefs nor that Horton possessed personal knowledge of the matters contained therein. Appellant additionally argues that the facts in the complaint failed to provide sufficient information to support an independent determination of probable cause.

■ Simply answering whether the affidavit was defective, however, would not end our analysis of this point. The mere fact that evidence is discovered after an illegal arrest and the appellant was in custody does not require that the evidence be excluded from the trial. Appellant argues that the evidence should have been excluded because "but for" the arrest and the appellant being in custody, the statements would not have been overheard. Reviewing courts, however, are not required to use either a per se or "but for" rule in analyzing the admissibility of such evidence. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). The evidence will be admissible if the taint of the illegality can be purged. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Wicker v. State,* 667 S.W.2d 137 (Tex.Cr.App.1984). In determining whether the taint of illegality has been purged, courts are to consider:

1) whether *Miranda* warnings were given

2) the temporal proximity of the arrest and the statement

3) the presence of intervening circumstances; and

4) the purpose and flagrancy of the official misconduct.

*Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62.

In considering these factors, "[n]o single fact is dispositive." *Id.* at 603, 95 S.Ct. at 2261. The Court of Criminal Appeals, however, has interpreted the *Brown* opinion to stress the importance of the fourth factor. *Barber v. State,* 737 S.W.2d 824, 833 (Tex. Cr.App.1987), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). The record reveals that *Miranda* warnings were not given. The other factors, however, cause us to conclude that even if this was an illegal arrest, the taint of that illegality was purged.

---

**2.** The Court of Criminal Appeals has recently held that appellate courts are no longer to use the "exclusion of other reasonable hypothesis" analysis in assessing the sufficiency of the evidence adduced at trial. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Cr.App.1991). The *Geesa* opinion is inapplicable to this case, however,

because the Court of Criminal Appeals also held that the *Geesa* analysis would be applied only to the parties in that case and to all future cases "but not [to] those [cases] pending on direct review or not yet final at the time of the decision,...." *Id.* at 164 The trial of the instant case was completed March 1, 1989.

Since the conversation at issue occurred at least one day after the arrest, we find that the temporal proximity factor favors the purging of the claimed taint. While there were no intervening circumstances such as a presentment before a magistrate, the statements were made voluntarily. The evidence was not developed during custodial interrogation. Appellant and her mother were alone in the jail cell when they openly discussed the "silencing" of Debbie Logan.

There is no evidence that Deputy Horton's purpose in arresting appellant was to obtain incriminating statements from her. Deputy Horton respected appellant's desire not to speak directly with any police officers. Deputy Horton did not attempt to coerce appellant into making any statement. "Nothing indicates that appellant's arrest was violent or designed to 'cause surprise, fright and confusion.'" *Id.* After considering all of the factors together, we find that the taint of the arrest, if it be illegal, was overcome because the statements were made as an act of free will. The trial court did not err in failing to exclude the testimony of Deputy Horton concerning appellant's conversation with Faye Logan about preventing Debbie Logan from testifying. Appellant's second point of error is overruled.

In her third point of error, appellant asserts that the trial court erred by admitting incompetent reputation evidence at the punishment phase of the trial. Appellant's specific complaint is that the state failed to lay the proper predicate for the reputation testimony. On this basis, appellant argues that the testimony of Sheriff Blan Greer and Deputy Horton was incompetent to prove appellant's reputation.

The analysis of this point involves a two-step process. If a trial court is found to have committed error in admitting incompetent reputation evidence, a conviction may still be upheld if that error is found to be harmless. *Wagner v. State*, 687 S.W.2d 303 (Tex.Cr.App.1984). In determining whether reputation testimony was improperly admitted, we must discern whether the testimony constitutes "the kind of synthesis of observation and discussion in the community which is the basis for deeming reputation evidence reliable." *Id.* at 314.

When asked about appellant's reputation for being a peaceful, law abiding citizen, Sheriff Greer replied that appellant's reputation was "not good." Deputy Horton answered the same question by characterizing appellant's reputation as "bad." Both officers testified that their opinions were based upon their personal dealings with appellant and discussions of appellant within the community.

The record reflects that Sheriff Greer had been the sheriff of Sabine County, appellant's county of residence, since 1965. Deputy Horton testified that in his capacity as deputy sheriff, he had been called to the appellant's residence several times. We find that the trial court acted properly in admitting the reputation testimony of officers Greer and Horton.

Moreover, even if we were to believe that the trial court had erred in admitting the evidence, we would nevertheless be compelled to find that such error was harmless. In *Wagner*, the Court of Criminal Appeals held that reputation testimony based solely upon a specific incident should have been excluded. *Wagner*, 687 S.W.2d at 314. The court also concluded, however, that the error was harmless. *Id.* The court noted that the improperly admitted testimony was concise and unembellished. *Id.* Furthermore, the prosecutor made no mention of the testimony in his closing argument, emphasizing instead the violent nature of the crime. *Id.* In this case, the testimony similarly lacked any embellishment. Likewise, the prosecutor made no mention of the testimony in his closing argument. For the foregoing reasons, appellant's third point of error is overruled.

In her fourth point of error appellant complains of the trial court's refusal to suppress evidence obtained by Deputy Turk and Deputy Horton during a warrantless search of the remains of the mobile home. Appellant contends that the search violated her fourth amendment rights and

that the evidence obtained contributed to her conviction.

■ Appellant correctly argues that warrantless searches are permissible only under limited circumstances. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Regarding fire-damaged premises, however, the warrant requirement applies only if some reasonable privacy interest remains in the fire-damaged property. *Michigan v. Clifford,* 464 U.S. 287, 292–93, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984). The test of whether such a reasonable privacy interest remains is whether the interest advanced is one society is prepared to characterize as reasonable. *Clifford,* 464 U.S. at 293, 104 S.Ct. at 646. The United States Supreme Court has expressly stated that "[s]ome fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the owner's subjective intentions." *Id.*

In *Clifford,* the Supreme Court found that the Cliffords still retained reasonable privacy interests in their fire-damaged home, regardless of the fact that the home was uninhabitable. The court noted that the exterior of the house and a number of upstairs rooms sustained no damage and that some of the Cliffords' personal belongings remained in the house. *Clifford,* 464 U.S. at 296, 104 S.Ct. at 648. Also, the Cliffords had made arrangements to secure the house against intrusion during their absence. *Id.*

Appellant's case is not analogous to the *Clifford* facts. The photographs of the remains of the mobile home reveal that the structure was so badly damaged as to preclude any reasonable expectation of privacy. Appellant, unlike the Cliffords, took no measures to secure the remains of the premises from intrusion. In fact, when Officer Turk located appellant, appellant readily signed a consent form to allow another search to be conducted. As there were neither reasonable privacy interests in the ruins of the mobile home nor any attempts to secure the premises from intru-

sion, we overrule appellant's fourth point of error.

■ Appellant's fifth point of error alleges that the trial court erred in failing to recuse special prosecutor Michael Ratcliff. Appellant's complaint is based upon the fact that Mr. Ratcliff was also representing the decedent's mother in certain civil actions arising out of decedent's death. Appellant asserts that no special prosecutor should have been appointed because there was no absence or disqualification of the duly elected district attorney. TEX. CRIM. PROC. CODE ANN. § 2.07(a) (Vernon 1977). Appellant also complains of Mr. Ratcliff's failure to file an oath of office. TEX. CRIM. PROC. CODE ANN. § 2.07(c) (Vernon 1977). Appellant cites *Loshe v. State,* 160 Tex. Crim. 561, 272 S.W.2d 517 (1954) as authority for the contention that the trial court committed reversible error.

In *Loshe,* the record revealed that the special prosecutor neither conducted the trial nor controlled the introduction of evidence during the trial. *Loshe,* 272 S.W.2d at 520. Appellant emphasizes that Ratcliff examined witnesses, prepared and offered documentary evidence, and argued the case at both the guilt/innocence and punishment phases. Appellant contends that these facts distinguish her case from *Loshe* and require a reversal.

■ We agree with appellant's contention that her case differs from *Loshe;* we disagree that the trial court committed reversible error. The appointment of a special prosecutor is within the discretion of the trial court. *Loshe,* 272 S.W.2d at 520. Furthermore, appointments of special prosecutors are not predicated upon the absence or disqualification of the elected district attorney. *Lopez v. State,* 437 S.W.2d 268 (Tex.Cr.App.1968); *Fitzgerald v. State,* 722 S.W.2d 817 (Tex.App.—Tyler 1987), *aff'd,* 782 S.W.2d 876 (Tex.Cr.App. 1990). The requirement of filing an oath of office, however, applies only when the elected district attorney is absent or disqualified. *Ballard v. State,* 519 S.W.2d 426, 428 (Tex.Cr.App.1975). Finally, in cases where the elected district attorney participates in trial with a special prosecu-

tor, grounds for complaint exist only if the elected district attorney fails to retain management and control of the case. *Id.* Even though Mr. Ratcliff had an active role in the trial, the district attorney herein always retained management and control of the case. Finding no abuse of discretion, we overrule appellant's fifth point of error.

■ Appellant's sixth point of error asserts that the trial court should have granted appellant's motion for mistrial based upon a question by the prosecutor. The prosecutor asked Roy Logan, "That wasn't the day that Tommie Lea drugged him up to sign his divorce papers was it, or was it?". Appellant's objection was sustained and the court instructed the jury to disregard the question. Appellant's subsequent motion for mistrial was denied.

■ When a prosecutor asks an improper question, the court may cure or render the error harmless by striking the question and instructing the jury to draw no inferences from the question. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979 [Panel Op.] 1979). The instruction will not cure the error if the question asked is of such a nature that it was clearly calculated to inflame the minds of the jurors and was of such character as to suggest the impossibility of withdrawing the impression produced in the minds of the jurors. *Id.* at 892–93. In determining whether a question may be cured by an instruction to disregard, a reviewing court also considers whether the prosecutor exercised bad faith in posing the question. *Id.* at 893.

We do not find bad faith in the prosecutor asking the question. The record reveals that Roy Logan testified that he had found appellant and the decedent alone in their mobile home. On the instant occasion, the decedent was overdosed on valium. Considering that the evidence already showed that appellant had deceived her late husband about her pregnancy to expedite his divorce from his former wife, it is not unreasonable that a prosecutor would inquire as to whether drugs had likewise played a part in that earlier scheme. While the question may have been improper, we

find that any error was cured by the court's instruction to disregard. Appellant's sixth point of error is overruled.

■ Appellant's seventh point of error alleges that the trial court erred by allowing the prosecutor to engage in manifestly improper jury argument. The prosecutor's argument concerned Brenda Turley's testimony about having overheard appellant express remorse for murdering the decedent. During closing argument, the prosecutor characterized this testimony as "direct" evidence of appellant's guilt. Appellant's objection to this argument was overruled.

■ The difference between circumstantial and direct evidence is that the former is direct proof of a minor fact which, through logical inference, demonstrates the veracity of the fact to be proved. *Crawford v. State,* 502 S.W.2d 768, 769 (Tex.Cr.App.1973). Direct evidence, however, is "proof of facts by witnesses who saw the acts done or heard the words spoken." *Bruenger v. Burkett,* 364 S.W.2d 453, 455 (Tex.Civ.App.–Eastland 1963, no writ). Direct evidence applies directly to the ultimate fact to be proved. *Crawford,* 502 S.W.2d at 769. The testimony of Brenda Turley was direct evidence. Assuming, however, that the testimony was only circumstantial evidence of appellant's guilt, a finding that the prosecutor's argument was improper would still not require a reversal.

■ Improper jury argument constitutes reversible error only if, in the light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts which are harmful to the accused. *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App. 1980). The prosecutor's argument in this case violated no mandatory statute. This argument was neither extreme nor manifestly improper. *See Lopez v. State,* 500 S.W.2d 844 (Tex.Cr.App.1973) (manifestly improper for prosecutor to state that defense counsel was lying to the jury); *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972) (manifestly improper for prosecutor to comment that he was glad that he did not have to represent people of defendant's

caliber). At most, the prosecution may have mischaracterized the evidence. This "mischaracterization," however, injected no new facts into the case.

We conclude from the totality of the record that no reversible error was committed. Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

On original submission, we held that the State had introduced evidence sufficient to convict Appellant for the offense of murder. Appellant's murder conviction was affirmed.

■■■ In her motion for rehearing, Appellant urges two grounds for review. First, she contends that the evidence is insufficient to support her conviction. The thrust of Appellant's first ground is that Appellant's expert expressed the view that no flammable liquid had been used to ignite the fire.

Appellant's expert did state that, in his opinion, no accelerant was used in the fire. Appellant's expert also acknowledged, however, that he could not dispute a chemist who had analyzed the debris and found that a petroleum product had been used.[1] The State's expert testified that a flammable liquid had been used, that a pour pattern existed at the scene of the fire, and that a chemical analysis performed with a gas chromatograph revealed the presence of a flammable liquid within the C12 to C20 range. Moreover, another of Appellant's witnesses, a chemist, stated that substances which registered on the gas chromatograph in the C12 to C20 range were flammable. From this record, we conclude that the evidence was not controverted that a flammable liquid had been used to start the fire.

Appellant additionally alleges that this Court erred in concluding "that the state need not refute every reasonable hypothesis other than the guilt of the accused." First, our statement of this legal principle in our opinion noted that the State having the burden of proof "does not mean ... that the state must *directly* refute every purportedly reasonable hypothesis." *Jackson v. State*, 672 S.W.2d 801, 804 (Tex. Cr.App.1984) (emphasis added). The Court of Criminal Appeals has expressly stated that while evidence relied on must exclude every other reasonable hypothesis except the guilt of the accused,

> This does not mean that if evidence is presented at trial suggesting innocence, the jury cannot find the defendant guilty. Juries are charged with the responsibility of resolving factual questions. In this process, a jury may reject evidence and testimony which suggests innocence. Thus, "the rule that evidence must exclude every reasonable hypothesis of innocence refers to evidence which the jury believes and relies upon to support its verdict." (citation omitted.)

*Castro v. State*, No. 835–90, Slip op. at 3, 1992 WL 1131 (Tex.Cr.App. January 8, 1992). In this case, the jury relied upon evidence sufficient to support Appellant's conviction. We find no merit in Appellant's first ground for rehearing.

■■■ Appellant, by her second ground, contends that the trial court erred in admitting reputation testimony from Sheriff Greer and from Deputy Horton. The focus of Appellant's argument is that the testimony was based solely upon the officers' conversations with other members of the community about Appellant's bad acts, contrary to the holding in *Hernandez v. State*, 800 S.W.2d 523 (Tex.Cr.App.1990). Appellant alleges not only that the admission of the testimony was erroneous, but also that the error committed was harmful.

We disagree with Appellant's assertions. First, we reiterate our holding that the trial

1. The pertinent exchange between the prosecutor and the expert went as follows:

    Q: And if the chemist that perpared the report said there was a pertroleum product used, you would not be in a real good position to disagree?

    A: No, sir, I wouldn't disagree with him.

court properly admitted the reputation testimony. Sheriff Greer expressly stated that he based his opinion on both his personal dealings with Appellant *and* discussions he had heard from, or engaged in with, numerous other people. Deputy Horton likewise stated that he had heard Appellant's reputation discussed. While Deputy Horton did admit that he based his opinion upon his personal dealings with Appellant, he also stated that what he had heard discussed would not change his opinion of Appellant's reputation. These witnesses' opinions were concise, without embellishment and without reference to an extraneous offense. While the predicate could have been laid more precisely for Deputy Horton's testimony, we adhere to our conclusion that the trial court committed no error.

Even if we assume that Deputy Horton's testimony should have been excluded, we would still be required to conclude that the error by the trial court was harmless. The *Hernandez* opinion does not mandate a reversal of Appellant's conviction. In *Hernandez,* the Court of Criminal Appeals expressly stated that when "the *only* evidence presented at the punishment phase of the trial was the improperly admitted reputation evidence, one cannot say beyond a reasonable doubt that the error did not contribute to the punishment." 800 S.W.2d at 525 (emphasis added).

At the punishment phase of this trial, however, the State introduced the testimony of Sheriff Greer, Deputy Horton, and Mrs. Oyler Smith, the mother of the decedent. Smith stated that at her son's funeral, Appellant and Faye Logan showed no remorse and that "[a]fter the burial they were outside the cemetery laughing and talking like they had been to a big party." Appellant has not objected to the admissibility of Smith's testimony. Therefore, we conclude that any error committed was harmless, because there was testimony other than that of Greer and Horton offered by the State at the trial's punishment phase. Appellant's second ground for review is overruled.

For all the aforementioned reasons, Appellant's motion for rehearing is overruled.