# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00123-CR

**Jimmy Elms, Appellant**

v.

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-99-0498, HONORABLE CHUCK MILLER, JUDGE PRESIDING

After a jury trial, appellant was convicted of injury to a child and arson. *See* Tex. Penal Code Ann. §§ 22.04, 28.02 (West Supp. 2001).[1] He was sentenced to three years' confinement for injury to a child and twenty years' confinement for arson, with $20,000 in fines assessed. In one point of error, appellant contends that the trial court erred in overruling his motion to suppress the evidence obtained under three warrants, violating appellant's rights under the United States Constitution, Fourth and Fourteenth Amendments, Texas Constitution, Article 1, Section 9, and Texas Code of Criminal Procedure Articles 18.01 and 38.23. We will affirm the conviction.[2]

---

[1] Jimmy Elms's wife, Chong Ran Elms, was tried separately. She appealed to this court, but voluntarily dismissed her appeal. *Elms v. State*, No. 03-99-00803-CR, 2000 Tex. App. Lexis 242 (Tex. App.—Austin Jan. 13, 2000, no pet.) (not designated for publication).

[2] Appellant simply lists *every* state's exhibit as being improperly admitted. Due to our disposition of the case, we need not enumerate the exhibits covered by the challenged warrants. Ultimately, evidence was seized without need for a warrant, under an exception to the need for a warrant, or, alternatively, under a duly issued warrant. Although appellant's point of error claims a violation of both the federal and state constitutions, he does not argue that the Texas constitution provides greater protection. For purposes of this opinion, we consider their protections congruent. *See Heitman v. State*, 815 S.W.2d 681, 691 n.23 (Tex. Crim. App. 1991).

Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will detail facts only as relevant to the motion to suppress.

**Discussion**

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In reviewing a motion to suppress, the appellate court must give almost total deference to a trial court's determination of historical facts that the record supports, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). With mixed questions of law and fact which turn on an evaluation of credibility and demeanor, courts should also defer to the trial court's ruling, but a court may review de novo the application of the law to the facts which do not run on questions of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and as such, may accept or reject any or all of a witness's testimony. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Alvarado v. State*, 850 S.W.2d 17, 23 (Tex. Crim. App. 1993). An appellate court reviews the evidence in the light most favorable to the trial court's ruling. *Wood*, 18 S.W.3d at 646; *Guzman v. State*, 955 S.W.2d at 89.

***Fire-Scene Investigations***

At 2:00 a.m. on February 18, 1998, John Dees, a Hays County Deputy Sheriff's Officer, was dispatched to investigate a reported fire at appellant's home. Appellant told Teril Falk, a Buda Volunteer firefighter, that there was an infant still inside the house. Rescue efforts failed, resulting in the infant's death. An investigation into the cause of the fire began.

Appellant complains that the first warrant authorizing a search of the scene of the fire was improperly obtained. He contends that second and third warrants authorizing later searches depended on evidence improperly seized under the first warrant, and were therefore tainted. He does not complain that probable cause was lacking for the issuance of the first warrant; therefore, he must be complaining that information or physical evidence improperly obtained *before* the issuance of the warrant formed the probable cause for its issuance. Before addressing the necessity or propriety of any of the warrants, however, we discuss a major exception to the warrant requirement.

Both the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution forbid unreasonable searches and seizures. Warrantless searches are unreasonable per se unless they fall under one of a few specific exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000); *Brimage v. State*, 918 S.W.2d 466, 500 (Tex. Crim. App. 2000) (op. on reh'g). People normally have an actual and subjective expectation of privacy in their residence, and society is prepared to recognize this expectation as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Torrez*, 34 S.W.3d at 14.

However, a person has no reasonable expectation of privacy in premises to which firefighters have been summoned to extinguish a fire and evidence which might be in plain view is

therefore subject to seizure without a warrant. *See Michigan v. Tyler*, 436 U.S. 499, 509 (1978). Such officials may remain on the premises for a reasonable time without the need for a warrant.[3] *Id*. at 510. Here, officials at the fire scene were informed that a child was in the still-burning residence, thus creating exigent circumstances that justified entrance both to fight the fire and to rescue a person in danger of serious injury or harm. *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *Brown v. State*, 475 S.W.2d 938, 949-50 (Tex. Crim. App. 1971); *see also Bray v. State*, 597 S.W.2d 763, 764 (Tex. Crim. App. 1980) (lawfulness of emergency search terminates when emergency ends); *cf. Torrez v. State*, 34 S.W.3d 10, 17 (Tex. App.—Houston [14th Dist.] 2000, pet. filed) (no evidence that any person in danger of serious bodily injury or death to justify warrantless entrance into trailer). "The aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or secure the owner's consent to inspect fire-damaged premises." *Michigan v. Clifford*, 464 U.S. 287, 293 (1984). Because determining the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such cases. *Id*. Further, "[i]mmediate investigation may also be necessary to preserve evidence from intentional or accidental destruction." *Id*. at n.4 (quoting *Michigan v. Tyler*, 436 U.S. 499, 510 (1978)).

---

[3] *Michigan v. Tyler* was not specific about the meaning of "remain" and "reasonable time" but said generally that all facts and circumstances surrounding a search must be considered. 436 U.S. at 510 n.6; *see generally* Theresa Ludwig Kruk, Annotation, *Admissibility, in Criminal Case, of Evidence Discovered by Warrantless Search in Connection with Fire Investigation—Post-Tyler Cases*, 31 A.L.R. 4th 194 (1984); 4 Wayne R. LaFave, *Search & Seizure* § 10.4 (3rd ed. 1996).

Some reasonable expectations of privacy may remain in fire-damaged premises, however. *Clifford*, 464 U.S. at 292-93; *Tyler*, 436 U.S. at 505. Privacy expectations vary with the type of property, amount of damage, prior and continued use of the premises, and, in some cases, the owner's efforts to secure it against intruders. *Clifford*, 464 U.S. at 292. The test is objective; type premises may be so damaged that, regardless of the owner's subjective expectations, no privacy interest remains. *Id*. If a reasonable expectation of privacy remains, the warrant requirement applies only to additional investigations begun after the fire has been extinguished and fire and police officials have left the scene and in the absence of any new exigency. *Id*. at 292-93

In this case, the court had before it evidence that the Elmses' home was in essence leveled by the fire—no walls, windows, or doors remained which could have been boarded up to secure the premises. The trial court found that the destruction was so thorough that no reasonable expectation of privacy in the premises remained. *See Davis v. State*, 840 S.W.2d 480, 486-487 (Tex. App.—Tyler 1992, pet. ref'd) (destruction so severe that no reasonable privacy interests remained; no attempts to secure premises on owner's part); *cf. Clifford*, 464 U.S. at 290, 295 (at owner's instructions, house boarded up within hours after fire extinguished; crew was completing job at time of investigator's return to scene; minimal fire damage to much of multi-story structure). Of course, if no reasonable expectation of privacy exists, then a warrant is not necessary.

### The Warrants

To the degree that any reasonable expectation of privacy in the burned-out premises could have been left and to any degree that the fire-scene investigators did not "remain" on the scene

but returned at a time attenuated enough from the aftermath of the fire to need a warrant,[4] those warrants were properly issued.

No search warrant may issue unless supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2001). Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587-88 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). The sufficiency of a search warrant affidavit is determined by use of a "totality of the circumstances" analysis. *Illinois v. Gates*, 462 U.S. 213, 234 (1983); *Hennesy v. State*, 660 S.W.2d 87, 90 (Tex. Crim. App. 1992). A search warrant must be read in a common sense and realistic manner, and reasonable inferences may be drawn from the facts and circumstances within its four corners. *Cassias*, 719 S.W.2d at 587-88; *see Bradley*, 966 S.W.2d at 873. The issuing magistrate must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Johnson v. State*, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990).

In the affidavit used to secure the first warrant, the officer-affiant stated that when he arrived at the scene he learned that a seven-month-old infant female had remained in the residence

---

[4] Appellant focuses on the approximately one-hour period before the search pursuant to the first warrant began and does not raise a challenge under *Tyler's* "reasonable time" standard. In any event, we have reviewed the record and do not find any evidence of items seized between the immediate aftermath of extinguishing the fire and the later search pursuant to the warrant.

and died in the fire (information that appellant furnished). The affidavit recited that an autopsy had been ordered and the medical examiner stated that he was not certain whether the infant was dead or alive during the fire; the final test results that would show whether the child died as a result of the fire were not yet available.[5] The officer learned from neighbors that the adult female resident, later identified as Elms's wife, had gone next door to call 911 and was fully dressed with car keys in hand at 2:00 a.m. Appellant and a second child, a son, also escaped from the residence. While at the scene, officers observed a car and van loaded with various items, such as clothes and a television, which they observed though each vehicle's windows. The officer concluded that it appeared that the vehicle had been loaded with these items in an attempt to leave the residence. The evidence of a crime to be searched for was comparison samples to test for accelerants, a mattress cover from the bed in which the infant was sleeping at the time of the fire, and trace evidence.

The trial court, in its findings of fact and conclusions of law concerning the first warrant found that a common-sense reading and reasonable interpretation of the facts in the affidavit, particularly the facts indicating the Elmses were both fully dressed when the fire broke out around 2:00 a.m. and had removed significant personalty to their cars before the fire, combined with the other facts and the unknown cause of the fire, warranted a trained law enforcement officer to hold a reasonable suspicion and belief that, more likely than not, the fire had been deliberately set after removing valuables and dressing for the outdoors.

---

[5]    Later, it was discovered that the infant died of a skull fracture. According to Mrs. Elms's confession, the fire was set three days after the infant's death to hide the death.

Appellant seems to base most of his claim that the search was improper on one officer's written report that the search started at approximately "1710" (5:10 p.m.). That witness testified at trial that that time was a typographical error and should have read "1810" (6:10 p.m.). That witness also testified that, immediately before the search started, it began to rain, thus creating the possibility that evidence might be washed away. There was testimony before the court that the premises were not searched until the personnel on the scene were informed by telephone that a warrant had been signed, although the search began before the warrant itself physically arrived at the site.[6] It was the trial court's job to resolve any contradictions in the testimony on the motion to suppress. The trial court found that no search occurred prior to 6:25 p.m., other than pursuant to an exception to the warrant requirement (such as the exigent circumstance of rain, *see Clifford*, 464 U.S. at 293 n.4).

Nothing in the affidavit showing probable cause for the first warrant was information obtained from an unlawful search of the premises. The affidavit was based on items observable by any passerby and information voluntarily furnished by appellant, the neighbors or the medical examiner. The discovery of the infant's body occurred as part of the process of extinguishing the fire. Accordingly, we conclude that the first warrant, assuming a warrant was necessary, was lawfully issued. Accordingly, any information or evidence from the search under the first warrant that was used to procure the second and third warrants was legally obtained and did not taint those warrants.

---

[6] In any event, the warrant was effective on issuance. *See Johnson v. State*, 469 S.W.2d 581, 584 (Tex. Crim. App. 1971) (search made subsequent to issuance, officer called to tell officers on site that issued); *see also Prophet v. State*, 815 S.W.2d 836 (Tex. App.—Corpus Christi 1991, pet. ref'd) (radio communication that arrest warrant issued).

## Conclusion

We conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. Having overruled appellant's only point of error, we affirm the judgment of conviction.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   August 9, 2001

Do Not Publish

9