**Lonnie Cleo YORK, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–199–CR.**

Court of Appeals of Texas, Fort Worth.

Dec. 17, 1986.

Rehearing Denied Dec. 17, 1986.

Richard S. Podgorski, Denton, for appellant.

Jerry Cobb, Dist. Atty., and Jim Crouch, Asst. Dist. Atty., Denton, for State.

## OPINION ON MOTION FOR REHEARING

FARRIS, Justice.

Appellant appeals his conviction by a jury for the felony offense of theft over the value of $750.00, but less than $20,-000.00. *See* TEX.PENAL CODE ANN. sec. 31.03(e)(4)(A) (Vernon Supp.1986). The jury assessed punishment at four years confinement in the Texas Department of Corrections and a fine of $1,000.00, with a recommendation that both penitentiary confinement and fine be probated.

We reverse and acquit.

On February 4, 1985, appellant was stopped by a police officer for a traffic violation. Upon observing copper tubing in the back of appellant's pickup truck, the officer arrested appellant for theft. Investigation of nearby construction sites by another officer revealed several houses under construction where the copper tubing had been pulled out. The officer also discovered footprints similar to appellant's at the construction sites leading to the houses where tubing was removed. Appellant was charged by indictment for the felony offense of theft of property valued over $750.00, but less than $20,000.00.

At trial, the project manager of the construction sites testified that copper tubing

had been removed from six houses under construction. He further testified that, in his estimation, the replacement value for the copper tubing was $350.00 to $400.00 for each of the six houses. Appellant, testifying on his own behalf, claimed he found the copper tubing and assumed it to be scrap. In his estimation, he picked up about 200 pounds of scrap copper tubing, valued at $.60 per pound.

In his sole point of error, appellant contends that the State's evidence was insufficient to prove beyond a reasonable doubt that the value of the copper tubing alleged to have been stolen by appellant had a value over $750.00, but less than $20,000.00.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g).

In the instant case, the indictment charged that appellant "did then and there intentionally appropriate, by acquiring and otherwise exercising control over, property, to-wit: copper tubing of the value of $750 or more, but less than $20,000 from the owner...." Simply stated, appellant is charged with theft of copper tubing of the value in excess of $750.00 and the burden is on the State to prove that the value of the property allegedly stolen was in excess of that minimum amount.

Article 31.08 of the Texas Penal Code defines "value" as the fair market value of the property at the time and place of the offense or, if the fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. *See* TEX.PENAL CODE ANN. art. 31.08(a) (Vernon 1974).

Our initial determination, therefore, is whether the fair market value of the cop-

per tubing, at the time and place of the offense, can be ascertained.

The only evidence put forth by the State as to value of the copper tubing was as to *replacement* of the copper *back in the houses.* This is noted by the following discourse, which took place at trial:

[PROSECUTOR]: Now, then, let me ask you this, what was the cost of the—approximate cost of the replacement of the plumbing for each of these houses?

[APPELLANT'S ATTORNEY]: Judge, again I object to that. Mr. York is charged with theft of copper tubing, not theft of plumbing, there is a difference.

THE COURT: Yes. Confine it to the allegation.

[PROSECUTOR]: All right. In regard to the copper tubing in that location, and the fashion that the copper tubing was in the ground, in the foundation, what was the approximate cost for the replacement of the copper tubing in the condition that it was in when it was removed from the house?

[PROJECT MANAGER]: It's approximately $350 to $400 a house to have the copper put back in.

The State asserts that the project manager's testimony regarding replacement cost of the copper was the correct method of determining the value of the property allegedly stolen. We disagree with the State's summation of the testimony.

■ The value of copper tubing is not the same as the cost of having copper tubing put back in the houses. The latter includes labor and other intangibles which would make the replacement cost greater than the cost of the copper tubing.

■ A conviction for theft of property cannot depend upon items not alleged in the indictment to have been stolen. *Coronado v. State,* 508 S.W.2d 373, 374 (Tex. Crim.App.1974); *Ballinger v. State,* 481 S.W.2d 421, 422 (Tex.Crim.App.1972). When the only evidence as to value includes the value of items not alleged to

have been stolen, there is in effect no evidence to show that the value of the items involved was in excess of the minimum amount necessary to support the conviction. *Martin v. State*, 491 S.W.2d 421, 422 (Tex.Crim.App.1973); *Ballinger*, 481 S.W.2d at 422. In such a case, art. 31.08 provides that when the value cannot be reasonably ascertained, the property is deemed to have a value in excess of $200.00, but less than $750.00. *See* TEX. PENAL CODE ANN. art. 31.08(c) (Vernon Supp.1986).

The State also argues that if appellant was not satisfied with the manner of proving the value of the copper tubing, it was appellant's duty to object either after the State's question or after the witness's answer. The State claims that, even if the answer was too inclusive, appellant's failure to object a second time to the question constituted a waiver of objection as to the manner of proof.

▮ Again, we disagree with the State's contention. As a general rule, counsel must object every time allegedly inadmissible evidence is offered. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim. App.1984). However, the State's questioning in this area, although admissible, was irrelevant as to value necessary to determine the degree of offense. Since we have decided that the correct method of calculating "value" is the value of the copper tubing itself, and not the cost of replacing the tubing in the houses, the testimony of the project manager of the cost of replacing the installed tubing has no bearing on this issue. Appellant's failure to object to the State's rephrased question a second time does not cause appellant to acquiesce in the manner of proof.

Since the State did not present sufficient proof that the property taken had a value in excess of $750.00, we sustain appellant's point of error.

Because the conviction must be reversed for insufficiency of the evidence to support the finding of guilty, the cause is remanded to the trial court with an order to enter a judgment of acquittal. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

Judgment reversed and appellant acquitted.

JOE SPURLOCK, II and HILL, JJ., join in this opinion.

KELTNER, J., files a concurring opinion in which HOPKINS, J., joins.

FENDER, C.J., files a dissenting opinion in which BURDOCK, J., joins.

KELTNER, Justice, concurring.

I concur with the result the majority reaches, but for reasons not expressed in the majority's opinion.

The only issue before us on appeal is the sufficiency of the evidence on the issue of the value of the stolen property. York was indicted with theft of copper tubing of a value of $750 or more, but less than $20,000. TEX.PENAL CODE ANN. sec. 31.03 (Vernon Supp.1986). As a result, he was charged with a third degree felony.

York was stopped early on the morning of February 4, 1985 by a patrol officer for a traffic violation. York could produce no driver's license or any other means of identification. As a result, he was detained and, after receiving Miranda warnings, questioned about his activities in the area. York admitted that he had picked up scraps from a nearby construction site. He allowed the officer to view the contents of his pickup truck which was loaded with copper coils and straight copper tubing sections.

Another officer was called to the scene and investigated the nearby area. The area consisted of construction sites for new homes. The officer's investigation was aided by a new blanket of snow, and as a result, he discovered a set of fresh tire tracks and footprints to four construction sites. Copper tubing material had been pulled from the foundations of each of the four construction sites. This copper tubing

was laid in the foundation as part of the plumbing system of the houses.

At trial, two police officers were asked how much copper tubing was in York's truck. Neither officer could give an answer.

The construction supervisor of the homes from which the tubing was missing, testified that the copper plumbing was missing from six of the new home foundations. The supervisor also testified that the City of Carrollton and F.H.A. codes prohibited any cuts or splices in the copper plumbing in the foundation of a house. As a result, the copper tubing remaining below the concrete line must be completely removed and replaced with new, unspliced copper tubing. The supervisor further testified that the copper tubing in the foundations prior to the theft would have passed the code inspections. However, after the cutting of the tubing during the theft, the copper tubing would fail the code inspections. The supervisor testified on cross-examination that he did not know how many feet of copper tubing were in each of the six houses or how much copper tubing cost per foot.

The only testimony regarding his valuation of the tubing occurred as follows:

[PROSECUTOR]: All right. In regard to the copper tubing in that location, and the fashion that the copper tubing was in the ground, in the foundation, what was the approximate cost for replacement of the copper tubing in the condition that it was in when it was removed from the house?

[PROJECT MANAGER]: It's approximately $350 to $400 a house to have the copper put back in.

[PROSECUTOR]: And how many construction sites was it again that the copper tubing was completely gone from?

[PROJECT MANAGER]: Six.

[PROSECUTOR]: Okay. So that would be somewhere between eighteen to fourteen hundred dollars?

[PROJECT MANAGER]: Yes.

The only other testimony regarding the value of the pipe came from York himself. He testified that he had taken approximately 200 pounds of copper tubing. He said that it would sell at a scrap yard for approximately 30 to 40 cents a pound, depending on the type of tubing. He also testified copper tubing could be purchased for 40 cents per foot at a hardware store. York stated that the 40 cents per foot figure was for brand new copper tubing and the 30 to 40 cents per pound figure was for scrap or trash type tubing.

Section 31.08 of the Penal Code defines value in theft cases. Subsection (a) provides as follows:

(1) the fair market value of the property or service at the time and place of the offense; or

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

TEX.PENAL CODE ANN. sec. 31.08(a) (Vernon 1974).

Despite the two methods of proving value, the jury was instructed in the court's charge that value, "means the fair market value of the property at the time and place of the offense."

It is obvious that none of the State's witnesses testified to the fair market value of the property. The only testimony of fair market value came from York himself. York's estimate of the fair market value was far less than the requisite $750 limit necessary for his conviction. As a result, the majority opinion has held that the evidence was insufficient to sustain York's conviction. The dissent states that the jury "chose to accept the replacement cost." If the jury did, they did so in contravention of the court's instruction.

On motion for rehearing, the State urges that the Court of Criminal Appeals' opinion in the *Sullivan* case is in direct conflict with the majority's opinion. *Sullivan v. State*, 701 S.W.2d 905 (Tex.Crim.App.1986). Specifically, the State claims that the passages quoted above were sufficient evidence of value. I disagree. However, the

State's contention of how *Sullivan* applies to the instant case presents an interesting issue.

In the *Sullivan* case, the Court of Criminal Appeals was faced with a situation much different than the instant case. There, the defendant was charged with theft of a shotgun and a rifle. The owner, from whose home the guns were stolen, testified that he was the owner of the guns and specifically testified to the market value of the guns. The Court of Criminal Appeals held that the testimony regarding the market value of the guns by the owner was sufficient to uphold the court's judgment. The Court went on to set out a standard upon which the State seeks to rely.

The Court held that testimony of value may be broken into two categories and tested differently. If a non-owner testifies as to value, that witness must be qualified as to his knowledge of the value of the property. Additionally, that testimony must explicitly indicate whether the witness is applying the "fair market value" test or the "replacement cost" test. However, if the owner testifies to the value of the stolen property, he or she may testify in "general and commonly understood terms," and it is not necessary to qualify the witness as to his or her opinion of value. In other words, the owner's testimony may be to the witness' best knowledge of the value of the property, regardless if the testimony mentions "market value" or "replacement value." The Court went further to say that when an owner testifies the presumption is that he or she is testifying to an estimation of fair market value. As stated by the Court, "[t]o hold otherwise would be to make the wholly unwarranted presumption that the owner is basing his estimate on sentimental value." *Id.* at 909.

When we apply *Sullivan* to this case, we find that the Court of Criminal Appeals' opinion is distinguishable. First, unlike *Sullivan*, all of the State's testimony regarding the copper tubing in this case was to "replacement cost," and not to "market value." As a result, the presumption that the owner was testifying to market value does not apply.

Furthermore, the State contends that the fair market value of the copper tubing could not be ascertained and, as a result, the State could prove replacement cost under TEX.PENAL CODE ANN. sec. 31.-08(a)(2). The State argues that the construction supervisor testified that the copper tubing had no value if spliced. I have reviewed the record and there is no such testimony. No witness testified that the value of copper tubing could not be ascertained. In fact, the only witness produced by the State regarding value testified that he did not know how much copper tubing was taken and did not know the value of new copper tubing. However, the defense presented evidence as to the value of new copper tubing per foot and also the scrap value of copper tubing. It cannot be seriously argued that copper tubing does not have a value that can be ascertained. The State seems to be saying that if it puts on no evidence of market value, it can contend that the market value cannot be ascertained. The fallacy of this argument is readily apparent.

Furthermore, the testimony in this case was to the cost of replacing tubing into the foundations rather than the replacement value of the copper tubing taken. In other words, the testimony was the cost of putting the copper tubing back into the foundations in the condition that it was prior to being removed. The State candidly admits in its motion for rehearing that the above quoted testimony by definition would include not only the value of the property stolen, but also the cost of labor and other expenses in replacing the tubing in the foundations of the houses.

In this case, it could be argued that the value of the item stolen should equate to the amount of loss to the victim. However, section 31.03(e)(4)(A) states otherwise. The value of the property in a theft case is the value of the item that was carried away by the thief. TEX.PENAL CODE ANN. sec. 31.03(e)(4)(A) (Vernon Supp.1986). This

does not mean that society is without a remedy. In a case such as this, it would be better to indict for criminal mischief. In such a case, the jury would not consider the value of the item carried away, but the harm done to the victim. As a result, the jury could consider (with the same range of punishment) the replacement cost of putting the property back in the condition that it was rather than value of the item taken under theft. TEX.PENAL CODE ANN. secs. 28.03, 28.06 (Vernon Supp.1986).

I concur with the majority opinion and disagree with the dissent. The dissent attempts to impose the "value lost to the victim" test in theft cases rather than evaluating the value of the item carried away by the thief. I believe that test to be improper under the language of section 31.03(e)(4)(A). However, it is a correct interpretation of the language of section 28.-03(b)(4)(A), criminal mischief. For these reasons, I concur in the majority's decision.

HOPKINS, J., joins in this opinion.

FENDER, Chief Justice, dissenting.

This is a theft case in which appellant challenges the jurisdiction of the felony trial court on the ground that the State failed to prove that the stolen copper tubing had a value of $750.00 or more. The majority opinion holds the following proof insufficient:

[PROSECUTOR]: All right. In regard to the copper tubing in that location, and the fashion that the copper tubing was in the ground, in the foundation, what was the approximate cost for the replacement of the copper tubing in the condition that it was in when it was removed from the house?

[PROJECT MANAGER]: It's approximately $350 to $400 a house to have the copper put back in.

In the Texas Penal Code at section 31.08 we find the following definition of the word "value":

(a)

....

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

....

TEX.PENAL CODE ANN. sec. 31.08(a)(2) (Vernon 1974).

I strongly feel that the quoted testimony, together with other testimony that six houses were despoiled of copper tubing, is sufficient to meet the cited statute. Testimony by appellant as to the scrap value of the tubing goes only to the weight of the quoted value. The jury chose to accept the replacement cost.

I would affirm the conviction.

BURDOCK, J., joins in this opinion.