In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00130-CR
______________________________


JIMMIE LEE TOWNSEND, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CR00379


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            A Red River County jury found Jimmie Lee Townsend guilty of theft by a public servant of
property valued at $1,500.00 or more, but less than $20,000.00. Because Townsend was a public
servant, the offense was a third-degree felony for which the jury assessed punishment at four years'
confinement. Townsend appeals, challenging, among other things, the sufficiency of the evidence
to establish the value of the property at the time of the offense. 
I.         FACTUAL BACKGROUND
            Jessica Emmers, a loan company employee, and her coworker were allegedly involved in
several instances of identity theft, and in June 2001, Emmers fraudulently ordered a Gateway laptop,
printer, case, and other items using the identity of her boss, Aimee Cruise. The Clarksville Police
Department (C.P.D.) investigated the matter, and in July 2001, seized the computer from Emmers. 
            The investigation continued until Emmers died in October 2002, at which time the case was
closed. At some point, Townsend, now police chief, took the computer from the C.P.D. evidence
locker to his home where, he maintained, he had been doing police work. 
            Meanwhile, family trouble was brewing and provides the background for events that may
serve as the context of this offense. In August 2000, Townsend began an affair with the city dog
catcher, Susan Wynn Chesshire. In May 2001, Chesshire moved in with Townsend, and the two
eventually had a son together. Townsend's niece, Shannon Crow,


 had been in trouble with the law
for quite some time. She was convicted and put on community supervision for burglary of a
habitation and had her community supervision revoked. She spent about seventeen months in jail,
was paroled, and found herself in more trouble a few months later. She was arrested and charged
with two counts of driving while intoxicated with a child in the vehicle, possession of a controlled
substance, and tampering with evidence. She then returned to jail for violating her parole. All the
while, she was having an on-again off-again romantic relationship with Steve Peek, son of Red River
County Judge, Powell Peek. Crow sometimes lived with Peek and sometimes lived with Townsend
and Chesshire. 
            According to Townsend, when Crow found herself in jail again, she enlisted his help. 
According to both Chesshire and Townsend, Crow told Townsend that she had information that Red
River deputies had destroyed a methamphetamine laboratory at Steve Peek's house and that the
matter had been "hushed up." Crow wanted Townsend to help her use this information to bargain
her way out of jail. At some point, Townsend claimed to have placed Crow in contact with Texas
Ranger Roger Laugh to investigate the alleged methamphetamine laboratory incident. Laugh did not
testify in this trial. 
            Meanwhile, Judge Peek had gotten word of some questionable disappearances from the
C.P.D. evidence locker and contacted Randy Haltom of the Special Crimes Unit with the Texas
Department of Public Safety. A short time later, either Red River County Sheriff Jerry Conway or
Steve Peek again contacted Haltom and informed him that Crow, still in jail and apparently unhappy
with Townsend, had some information for him regarding some evidence missing from the evidence
locker. Crow, saying she feared her children might be sent to stay with Townsend, had taken
pictures of the laptop at Townsend's house as leverage


 and had instructed Steve Peek to write down
the serial number. From jail, she directed Steve Peek to get the pictures developed and turn them
over to Sheriff Conway, who gave the pictures to Haltom. Haltom interviewed Crow and found out
that Townsend had taken the computer from the evidence locker. 
            Haltom contacted Fred Gerwick, then a C.P.D. patrol officer, and requested that Gerwick
make a copy of the evidence log. Townsend had made a notation in this evidence log that the
computer had been returned to its owner. Haltom then obtained a search warrant from a Bowie
County district judge and seized the computer. The day the computer was seized from his house,
Townsend could not find the release forms he said he completed showing he had the computer. He
also claimed to have realized he had made a mistake in noting in the evidence log that the computer
had been returned to its owner and changed the notation to reflect that he had borrowed it and that
the suspect (Emmers) had died. 
            In the final tally, Crow denied knowing anything about the methamphetamine laboratory
incident and claimed that Townsend was trying to enlist her help in setting up Steve Peek. The State
had charged Chesshire with retaliation against a witness in connection with an angry telephone call
Chesshire made to Crow. Pursuant to a deal in which the State agreed to dismiss those charges,
Chesshire testified to a host of Townsend's extraneous bad acts, including theft of drugs from the
evidence locker and sexual misconduct. Chesshire testified that Ranger Laugh did speak with Crow
at the house she shared with Townsend. 
            At the close of evidence, all that was clear was that Townsend had been using the computer
at his home. Townsend testified he had simply borrowed the laptop with permission, was doing
police work at home, and had incorrectly noted the computer's location in the evidence log because
he had been so busy. 
II.       LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO ESTABLISH
VALUE OF PROPERTY

            Obviously, there are more than a few inconsistencies among witnesses' accounts of the events
leading to the "borrowing" of the computer. However, we need not delve into many of the sordid
details of the several stories and theories surrounding the events in Red River County. Townsend's
sufficiency of the evidence argument is limited to the evidence supporting the value of the laptop on
the date of the offense, none of which is entirely clear. 
A.        Standards of Review
            The standard for reviewing legal sufficiency of the evidence to support a conviction is
whether, after reviewing all the evidence in the light most favorable to the verdict, any rational fact-finder could find the essential elements of the crime beyond a reasonable doubt. See Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
            In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt, or if the evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. See Threadgill v. State, 146 S.W.3d 654, 664
(Tex. Crim. App. 2004).
B.        Theft of Property by a Public Servant
            Theft of property valued between $1,500.00 and $20,000.00 is, ordinarily, a state-jail felony. 
Tex. Pen. Code Ann. § 31.03(a), (e)(4)(A) (Vernon Supp. 2006). When a public servant commits
the same offense, it is elevated one level, becoming, here, a third-degree felony. Tex. Pen. Code
Ann. § 31.03(f)(1) (Vernon Supp. 2006). 
C.        Value of Property
            The Texas Penal Code defines value, for purposes of crimes against property, as:
(1) the fair market value of the property or service at the time and place of the
offense; or
 
(2) if the fair market value of the property cannot be ascertained, the cost of
replacing the property within a reasonable time after the theft.

Tex. Pen. Code Ann. § 31.08(a) (Vernon 2003). Thus, the evidence is legally insufficient to prove
value if there was no evidence presented from which a reasonable fact-finder could find fair market
value beyond a reasonable doubt; or if it is shown that fair market value cannot be ascertained, if
there was no evidence from which the fact-finder could find replacement value beyond a reasonable
doubt. See Bryant v. State, 627 S.W.2d 180 (Tex. Crim. App. 1982); Drost v. State, 47 S.W.3d 41,
44 (Tex. App.—El Paso 2001, pet. ref'd).


 
D.        Fair Market Value
            Fair market value is the amount of money the property in question would sell for in cash if
given a reasonable time for selling it. Morales v. State, 2 S.W.3d 487 (Tex. App.—Texarkana 1999,
pet. ref'd). Put another way, fair market value for purposes of a theft prosecution may be expressed
as the price the property will bring when offered for sale by one who desires to sell, but is not
obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying. See
Valdez v. State, 116 S.W.3d 94 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). No one method
for calculating fair market value has ever been deemed exclusive. Keeton v. State, 803 S.W.2d 304,
305 (Tex. Crim. App. 1991).
            A conviction for theft of property cannot depend on items not alleged to have been stolen,
and where the only evidence on value includes the value of such items, there is in effect no evidence
to show that value was in excess of the minimum amount necessary to support the conviction. See
Coronado v. State, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974); Drost, 47 S.W.3d at 46; York v.
State, 721 S.W.2d 605, 607 (Tex. App.—Fort Worth 1986, pet. ref'd).
            The value of the property may be proven by the testimony of the owner as to its purchase
price if the property was relatively new at the time of the theft. See Nitcholas v. State, 524 S.W.2d
689, 690–91 (Tex. Crim. App. 1975); see also Alexander v. State, 694 S.W.2d 611, 612–13 (Tex.
App.—Texarkana 1985, no pet.) (holding that value was proven by price tag admitted into evidence
with item). If there is no testimony about the age of the property, its value is not established by
stating its purchase price, since this does not establish its value at the time of the offense. See Scott
v. State, 741 S.W.2d 435, 436–37 (Tex. Crim. App. 1987); Sweeney v. State, 633 S.W.2d 354,
355–56 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd).
E.        No Evidence that Fair Market Value Is $1,500.00 or More
            The State contends the evidence shows the computer had a fair market value of $1,500.00
or more. The State offered the receipts and testimony of a Citibank


 representative as evidence of
the fair market value of the laptop at the time of the offense. The receipt shows the following:
Laptop                                                                                                                                $1,194.00
Printer                                                                                                                                      129.00
3-year extended warranty                                                                                                        105.00
Learning 2000 software                                                                                                             99.00
Freight and handling (computer and printer)                                                                             70.00
Sales tax                                                                                                                                      8.67
Carrying case (shipped separately)                                                                                            59.00
Freight and handling (case only)                                                                                                 5.00

TOTAL                                                                                                                              $1,669.67
The State relied on these figures to propose a value of $1,605.67 by excluding the carrying case and
the freight on the carrying case.


 According to Citibank's representative and records, Citibank took
a loss of $1,659.67.


 By relying on the receipts or the loss realized by Citibank, the State maintained
that the computer was valued between $1,605.67 or $1,659.67. However, caselaw clearly indicates
that the fair market value of this computer cannot fall within this range.
            First, there is no evidence, and the State did not allege, that Townsend took the printer. Crow
testified she never thought that the printer at Townsend's house was taken from the C.P.D. evidence
locker. She knew the printer at home was from Rent-A-Center and informed Haltom of that, having
never suggested that the printer specified on the receipt was taken. Second, the State did not allege
Townsend took the carrying case that was part of the original sale. Crow admitted she now has that
very case and suggested that, at one point, Chesshire had it. Nor did the State allege that Townsend
stole the extended warranty services. See Tex. Pen. Code Ann. § 31.04 (Vernon Supp. 2006). Also
highly questionable is the inclusion of tax and freight and handling costs. See Drost, 47 S.W.3d at
46. Again, Townsend's conviction cannot be based on the value of items not alleged to have been
stolen. See Coronado, 508 S.W.2d at 374. So, relevant from the receipt amount is the computer at
$1,194.00 and the software package, arguably included, at $99.00, putting the original retail price
of the items alleged to have been stolen at $1,293.00.
            So, at its very highest, the fair market value of the property stolen would be less than the
$1,500.00 for which Townsend was convicted. In other words, the property that Townsend took
home was never valued at $1,500.00 or more no matter when Townsend took it.
            The State failed to prove an essential element of the offense, that the property at issue was
valued at $1,500.00 or more. The evidence does not show that the fair market value of the computer,
even when brand new, exceeded the minimum amount to make this offense a third-degree felony. 
We conclude that the evidence is legally insufficient to sustain the jury's verdict that Townsend was
guilty of theft of property valued at $1,500.00 or more, but less than $20,000.00. Accordingly, we
reverse the conviction and render a judgment of acquittal on the third-degree felony offense.
F.        Whether We Can Reform Judgment to Reflect Conviction of Lesser-Included Offense
            A court of appeals may reform a judgment of conviction to reflect conviction of a
lesser-included offense only if (1) the court finds that the evidence is insufficient to support
conviction of the charged offense but sufficient to support conviction of the lesser-included offense
and (2) either the jury was instructed on the lesser-included offense (at the request of a party or by
the trial court sua sponte) or one of the parties asked for, but was denied, such an instruction. See
Collier v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999); Logan v. State, 48 S.W.3d 296, 307
(Tex. App.—Texarkana 2001), aff'd, 89 S.W.3d 619 (Tex. Crim. App. 2002). 
            1.         Jury Charge on Lesser Offense
            Looking first at the second element, we note that this prong of the test is satisfied. The
charge to the jury included a charge on the theft by a public servant of property valued between
$500.00 and $1,500.00. Theft by a public servant of property valued between $500.00 and $1,500.00
is a state-jail felony, punishable by 180 days' to two years' confinement. See Tex. Pen. Code Ann.
§ 12.35 (Vernon 2003), § 31.03(e)(3), (f)(1) (Vernon Supp. 2006).
            Since the record clearly shows that the jury was instructed as to this state-jail felony, we now
return to the more complicated portion of the Collier test and evaluate the evidence to support a
finding that Townsend was guilty of the lesser offense of theft of property valued at $500.00 or more,
but less than $1,500.00. If we find that the evidence is legally and factually sufficient to support
such a finding, we may reform the judgment to reflect a conviction of that offense and remand the
case for a new trial on punishment. See Collier, 999 S.W.2d at 782; Bigley v. State, 865 S.W.2d 26,
27 (Tex. Crim. App. 1993).
            2.         Legally Sufficient Evidence to Support a Finding that the Computer Was
Valued at $500.00–$1,500.00

            Again viewing the evidence in a light most favorable to the verdict, we look to the record for
evidence from which a jury could rationally conclude the fair market value of the computer at the
time of the offense was between $500.00 and $1,500.00.
            The receipt and the Citibank representative established the original value of the computer and
software at $1,293.00. On May 20, 2004, Chesshire stated in an affidavit to investigators that the
"computer has been here for long as I rember [sic] or have been with Jimmie Townsend past 3
years." The generality of this statement does not specifically establish the time that Townsend
acquired the computer, but the statement could be interpreted to mean that Townsend had possession
of the computer for approximately three years. If so, this statement provides evidence of Townsend's
acquisition of the computer during the summer of 2001, which coincides with the approximate date
that the computer was seized by the police department. Chesshire's later assertion that Townsend
obtained the computer around November 2003 merely creates a fact issue for the jury to resolve. 
Based on Chesshire's written statement , the jury had some evidence to conclude Townsend took the
computer to his house very shortly after he seized the computer from Emmers in July 2001. Under
that scenario, the evidence of the purchase price of the computer could support a jury's conclusion
that the fair market value of the property stolen was $500.00 or more, because the State did elicit
testimony from Kenny Mitchell that the computer might be worth $1,000.00 two months after it was
purchased.


 
             Viewed in a light most favorable to the verdict, Chesshire's statement, the price shown on
the receipt, and the testimony that the computer might be worth $1,000.00 a couple of months after
it was purchased constitute evidence from which a jury could rationally conclude that Townsend
took the computer when its fair market value was $500.00 or more. That said, we conclude that the
evidence, while far from overwhelming, is legally sufficient to support a verdict that Townsend is
guilty of the state-jail felony of theft of property valued between $500.00 and $1,500.00. 
            3.         Factually Insufficient Evidence to Support a Finding that the Computer Was
Valued at $500.00–$1,500.00

            A neutral review of the record, however, reveals a great deal more uncertainty than a legal
sufficiency review yields. While the evidence is legally sufficient to support a finding that the fair
market value of the computer was $500.00 or more when Townsend took it home, we conclude that
the bulk of the record, viewed in a neutral light, demonstrates uncertainty as to when Townsend took
the computer. In fact, most of the record suggests that Townsend took the computer at a date later
than 2001. It follows that the record is equally unclear as to the value of the computer at the time
of the offense. 
            The question is whether the State proved that the value of the property at the time of the
offense was between $500.00 and $1,500.00. The answer depends on what date the jury could have
reasonably found was the date Townsend took the computer from the C.P.D. evidence locker. As
will become evident, the record is far from clear on that issue. Viewing in a neutral light the
evidence that the computer may have been worth $1,000.00 two months after it was purchased, we
point out that the bulk of the evidence fails to support the conclusion that Townsend took the
computer within two months of its purchase. The record suggests several different dates from both
the State's and defense's witnesses.
            Looking again at Chesshire's initial written statement the day the computer was seized, this
time in a neutral light, we point out that a literal application of that statement would mean that
Townsend possessed the computer in May 2001, before the computer was ever ordered. Chesshire
stated that Townsend had the computer since she "[had] been with Jimmie Townsend past 3 years." 
So, according to Chesshire's statement, Townsend had the computer for at least three years. Since
it is undisputed that the computer was shipped in July 2001, it is impossible for Townsend to have
possessed it in May 2001. The questionable, if not impossible, time frame posed by Chesshire's
written statement, if taken literally, undermines its probative value.
            We also evaluate Chesshire's written statement in the context of her trial testimony. 
Chesshire corrected herself at trial, explaining that she initially thought the laptop seized was
another, older laptop and added that, in a panic, she had tried to fashion a statement that distanced
her from any involvement with the computer. She went on to testify that she guessed this laptop
came into the house sometime before Christmas 2003. On cross-examination, she explained she was
certain Townsend had brought the computer home after they had moved to Cuthand, putting it
probably around November 2003. Other evidence also suggests Townsend did not take the computer
shortly after it was seized from Emmers.



            Townsend's initial statements to police refer to his contention that he obtained permission
from Chief Weldon Warren to remove the computer. Warren served as police chief of the
Clarksville Police Department from February 2002 to August 2002. However, in that same written
statement, Townsend indicates the computer was removed after the "suspect was deceased." Since
Emmers died in October 2002, Townsend's statements that he received permission from Chief
Warren (presumably while Warren was acting as chief) and that the suspect was deceased when the
computer was taken cannot both be accurate. This internal contradiction in the statement
substantially reduces its probative value. We note that the State failed to specify when, within that
time frame, Townsend took the laptop from the evidence locker. Not surprisingly, the State offered
no evidence establishing the fair market value of the laptop at any given time during that span of
months between February and August 2002. Again, Mitchell did offer an estimate of the value of
the computer in June 2002. According to Mitchell, in June 2002, the computer could be worth
approximately one-half of its original purchase price. The relevance and probative value of this
estimate is undermined, however, since there is minimal evidence Townsend took the computer
during this time frame generally and no evidence he took the computer in June 2002 specifically.
            Early in the investigation, Townsend also stated he had borrowed the computer
approximately one and one-half years ago, which would place the time of the offense in
approximately January 2003. The record contains evidence that the value of the computer would be
somewhere between $300.00 and $600.00 at that point. 
             Emmers died in October 2002. The State alleged the offense occurred "on or about
October 29, 2002." Since Townsend tied his "borrowing" to the fact that the case against Emmers
was closed on her death, we have examined the record for any evidence of the fair market value of
the computer around this time frame. The State, however, presented no evidence of the fair market
value of the computer around October 2002. The Citibank representative who testified at trial
admitted that he could offer no evidence as to the fair market value of the computer in October 2002
or otherwise: I "[d]on't know anything besides how to use a computer." He testified only as to the
original price of the computer and the amount Citibank lost in the fraudulent transaction. 
            Relying on Mitchell's testimony, we note that the record at least suggests the computer would
be valued well below $600.00. Mitchell testified the computer would be worth about one-half of its
original price in June 2002. Nearly half a year later, in October 2002, the computer would be worth
considerably less than $600.00 according to Mitchell's description of the rapid depreciation of
computers.
            At trial, Townsend contradicted his initial statements to police in May 2004 in which he
indicated that he had that laptop for about a year and a half. He, like Chesshire, referred to the move
to Cuthand as the point in time after which he brought the laptop to his house, sometime around
January 2004. He also remembered that his computer went down just before that point and that he
was using the computer to arrange continuing education for officers at that time of the year. While
this testimony conflicts with his original statements, it is fairly consistent with the date posed at trial
by Chesshire, who had agreed to cooperate with the State. Townsend's testimony is also consistent
with that of Townsend's friend and former C.P.D. officer, John Lorrance, who also testified that
Townsend "borrowed" the computer sometime around December 2003 to January 2004. 
            There is evidence of the fair market value of the computer during this time frame from
Mitchell. According to Mitchell, the value of the computer two years and four months after it was
purchased would be one-third of its original purchase price, between $430.00 and $440.00, and
perhaps even as little as $200.00 to $300.00. He explained that the specifications of this computer



had become all but obsolete in terms of the size of its memory and speed of its processor. The State
presented no contrary evidence to the value of the computer at that point in time, again having relied
almost exclusively on the receipt as evidence of the fair market value. 
            Based on the failure of the record, a jury could not determine the fair market value on the date
of the offense. Most of the evidence suggests Townsend took the computer after 2001. However,
the State failed to present evidence of the fair market value of the computer on or about most of the
possible dates. Further, if Townsend took the computer around November 2003, the only evidence
suggests that the fair market value of the computer was well below $500.00. In light of the absence
of any evidence fixing the value of the computer on the date of the offense and in light of the
evidence that suggests the computer may have been worth less than $500.00, we conclude that the
evidence was too weak to support a finding, beyond a reasonable doubt, that Townsend stole
property valued between $500.00 and $1,500.00. Additionally, we hold the evidence contrary to a
finding that the computer was worth $500.00 or more at the time it was taken was strong enough that
the State was unable to meet its burden of proving each essential element beyond a reasonable doubt. 
The evidence is factually insufficient to establish this element of the offense. We, therefore, remand
the case to the trial court for a new trial on the state-jail felony.
III.      CONCLUSION
            Having concluded that the evidence is legally insufficient to sustain the jury's finding that the
property at issue was valued at over $1,500.00, we reverse and render a judgment of acquittal as to
that offense. Viewing the record in a light most favorable to the verdict, we conclude that the
evidence is legally sufficient to support a finding that the property was valued between $500.00 and
$1,500.00. The evidence is factually insufficient, however, to support such a finding when we view
all the evidence in a neutral light. The evidence that the computer was valued at $500.00 or more
at the time it was taken is too weak to sustain a finding of guilt beyond a reasonable doubt. Further,
evidence contrary to a finding that the computer was worth $500.00 or more at the time it was taken
is strong enough that the State was unable to meet its burden of proving each essential element
beyond a reasonable doubt.
            We, therefore, reverse the conviction and remand the case to the trial court for a new trial



on the state-jail felony offense so a second fact-finder can evaluate the evidence. See Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 10, 2006
Date Decided:             September 20, 2006

Do Not Publish