NO.
12-06-00431-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

§                      APPEAL FROM THE 

IN THE MATTER OF D.L.,

§                      COUNTY COURT AT LAW #3

A JUVENILE

§                      SMITH COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            D.L.,
a juvenile, appeals from a juvenile court order committing him to the Texas
Youth Commission.  In one issue, D.L.
complains that the evidence is factually insufficient to support the jury
verdict finding the allegations against him to be true.  We affirm.

 

Background

            Kenneth Carrell is a coach and
teacher at John Tyler High School.  He
also supervises and manages the athletic department’s information technology
equipment including computers, servers, and camcorders.  Part of the inventory he maintained in a
locked storage room included two Sony mini-DVD camcorders.  The camcorders were “top of the line” with
special lenses of French manufacture, according to Carrell, as well as a number
of input and output ports that were useful to him in his duties.  The camcorders also had remote sensors that
linked them to a tripod remote, which allowed them to be used together and
synchronized to provide a wide angle as well as a tight angle view of the same
sequence of events.  One of Carrell’s
duties was to make recordings of the school’s athletes to provide to college
recruiters.  Because of the flexible
array of outputs available on the camcorders, Carrell used these devices to
edit the final recordings to be sent out in support of the school’s
athletes.  

            Around the beginning of May 2006,
Carrell noticed that the camcorders were missing from the locked storage
room.  A large number of students had
been in an adjoining classroom immediately before for the screening of a movie.  D.L. was one of the students present that
day.  Carrell engaged in some informal
investigation in an attempt to recover the camcorders and eventually turned the
matter over to the police affiliated with the school.  D.L. was identified as a suspect, and
juvenile proceedings were begun against him alleging that he stole the
camcorders and that they were worth more than $1,500.  D.L. did not admit the allegations, and an
adjudication hearing was held.  The jury
found the allegations to be true, and the trial court ordered that D.L. be
committed to Texas Youth Commission. 
This appeal followed.

 

Sufficiency of the Evidence

            D.L. contends that the evidence is
factually insufficient to support the decision of the jury. Specifically, he
contends that the evidence does not show that the value of the stolen
camcorders was equal to or greater than $1,500.

Standard
of Review and Applicable Law

            Even though appeals of
juvenile cases are generally treated as civil matters, adjudications of
delinquency are statutorily based on the criminal standard of proof, and we
review the sufficiency of the evidence as we would in a criminal case.  See Tex.
Fam. Code Ann. § 54.03(f) (Vernon 2006); In re C.M.G., 180
S.W.3d 836, 838 (Tex. App.–Texarkana 2005, pet. denied);  In re J.D.P., 85 S.W.3d 420,
422 (Tex. App.–Fort Worth 2002, no pet.). 
In criminal cases, we review the factual sufficiency of the evidence to
determine whether, considering all the evidence in a neutral light, the
evidence supporting the conviction is too weak to withstand scrutiny or the
great weight and preponderance of the evidence contradicts the jury’s verdict
to the extent that the verdict is clearly wrong and manifestly unjust.  See Watson v. State, 204 S.W.3d
404, 414–15, 417 (Tex. Crim. App. 2006). 
In doing so, we must first assume that the evidence is legally
sufficient under the Jackson v. Virginia[1] standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence that tends to prove the existence of the elemental
fact in dispute and compare it to the evidence that tends to disprove that
fact.  See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

            Our role is that of
appellate review, and the fact finder is the judge of the weight and
credibility of a witness’s testimony. 
Wesbrook v. State, 29 S.W.3d 103, 111–12 (Tex. Crim. App.
2000).  When we review the factual
sufficiency of the evidence, we are authorized to disagree with the jury’s
determination, even if probative evidence exists that supports the
verdict.  See Clewis, 922
S.W.2d at 133.  But our evaluation should
not substantially intrude upon the jury’s role as the judge of the weight and
credibility of witness testimony.  See
Santellan, 939 S.W.2d at 164.

            As alleged in the
petition, the State was required to prove that D.L. did, knowingly or
intentionally, appropriate property with a value of more than $1,500 without
the effective consent of the owner and with the intent to deprive the owner of
the property.  Tex. Penal Code Ann. § 31.03 (a), (b)(1),
(e)(4)(A).  

Analysis

            The State may prove the
value of stolen property by showing the fair market value of the property at
the time and place of the offense, or, if that cannot be ascertained, by showing
the cost of replacing the property within a reasonable time after the
theft.  Tex.
Penal Code Ann. § 31.08(a)(1), (2) (Vernon 2006).  D.L. argues that the State did not prove that
the value of the stolen camcorders was more than $1,500 because there was no
testimony about the fair market value of the camcorders and the replacement
cost was less than $1,500.  

            From the evidence, the
relevant data points regarding the value of these camcorders are as follows:

            1)         $1,500
to 1,600 – original purchase price, four or five years prior to the theft

            2)         $2,998
– replacement cost for new camcorders with the same features as those stolen

            3)         $1,600
– replacement cost of the camcorders actually purchased including tax and
accessories

            Fair market value is “the
dollar amount the property would sell for in cash, given a reasonable time for
selling it.”  See Simmons v.
State, 109 S.W.3d 469, 473 (Tex. Crim. App. 2003).  There was no testimony about the fair market
value of the stolen camcorders.  The
original purchase price can be an approximation of the fair market value if the
item has been purchased recently.  See
Nitcholas v. State, 524 S.W.2d 689, 690–91 (Tex. Crim. App. 1975); Anderson
v. State, 871 S.W.2d 900, 903 (Tex. App.–Houston [1st Dist.] 1994, no
writ).  However, as D.L. notes, these
camcorders had not been purchased recently.

            In cases where the fair
market value cannot be ascertained,[2] section 31.08(a)(2) provides that the
cost of replacing the property a reasonable time after the theft is the measure
of value.  There were two prices offered
as a replacement cost.  Carrell testified
that exact replacements of the stolen camcorders cost $1,499 each, for a total
of $2,998.   Carrell also testified that
he purchased inferior camcorders, without all of the features he needed, along
with accessories to give the functionality he required, and that the total cost
was $1,600. 

            As D.L. points out,
there are arithmetic computations that can bring the second amount, $1,600,
under the $1,500 threshold.  Specifically,
D.L. argues that accessories purchased with the camcorders, as well as the
sales tax paid, should not be included. 
There is a basis for this argument. 
For example, the replacement value of a compact disc player does not
include the cost of installation and “other intangibles necessary to compete
replacement,” Drost v. State, 47 S.W.3d 41, 46 (Tex. App.–El Paso
2001, pet. ref’d), and replacement value does not include the cost to replace
other items that might have been stolen along with the item alleged to have
been stolen.  See Ballinger v.
State, 481 S.W.2d 421, 422 (Tex. Crim. App. 1972).[3]

            We need not resolve this
issue, however, because the jury was entitled to rely on Carrell’s statement
that direct, one for one, replacements of the two stolen camcorders would cost
nearly $3,000.  The fact that Carrell
elected to cobble together another replacement, the value of which was closer
to the $1,500 floor, is of no moment. 
The level of offense committed by a thief who takes a Rolex timepiece is
not determined by the price of the replacement the victim purchases.  Even though he testified that he could not afford
to purchase them, Carrell testified that the replacement cost of camcorders
with the same functionality as those stolen was well in excess of $1,500.  Therefore, we hold that there was sufficient
evidence that the replacement cost, the appropriate measure of the value of the
stolen property, was more than $1,500. 
Furthermore, the evidence supporting this conclusion is not so weak or
so outweighed by contrary evidence that we conclude the verdict is clearly wrong
or is a manifest injustice.  We overrule
D.L.’s sole issue. 

 

Disposition

            We affirm
the judgment of the trial court.

 

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

 

 

Opinion delivered July 31, 2007.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

                                                

 

 

 

 

(PUBLISH)











[1] Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560
(1979).





[2] Other than Carrell’s assertion that the camcorders were worth more than
$1,500 to him, the State did not establish the fair market value of the
camcorders.  D.L. does not argue that the
fair market value can be ascertained.





[3] D.L. argues that sales tax cannot be included in the replacement cost,
citing Drost v. State, York v. State, 721 S.W.2d
605, 607 (Tex. App.–Fort Worth 1986, pet. ref’d), and Ballinger v. State.  Although in Townsend v. State,
No. 06-05-00130-CR, 2006 Tex. App. LEXIS 8217, at *12 (Tex. App.–Texarkana
2006, pet. ref’d) (mem. op., not designated for publication), the Sixth Court
of Appeals called the inclusion of tax “highly questionable,” based on Drost,
we are not convinced that sales tax must be excluded.  None of these cases specifically hold that
sales tax cannot be included in the replacement cost of a stolen item.  Ballinger began with the
unassailable proposition that the value of a stolen item could not include
property not alleged to be stolen.  Ballinger,
481 S.W.2d at 422.  York and
Drost expanded that to disallow the cost of installation and “intangibles”
when determining value.  York,
721 S.W.2d at 607; Drost, 47 S.W.3d at 46.  We are not persuaded that this line of cases
establishes that sales tax is not part of the replacement cost.  After all, it is part of what must be paid to
purchase a replacement.  Furthermore,
unlike wholly different items, the cost associated with sales tax is fairly
implied, we think, in the allegation of the theft of an item.  See also Robalin v. State, 224
S.W.3d 470 (Tex. App.–Houston (1st Dist.) 2007, no pet.) (including sales tax
in valuation of automobile).